Stormfeltz *versus* The Manor Turnpike Company.

| 13 | 555 |
| 128 | 633 |

| 13 | 555 |
| 175 | 296 |

| 13 | 555 |
| 26 SC | ‡104 |

Though the power of the legislature, in virtue of the right of eminent domain, to establish a turnpike gate in the street of a city, is not to be questioned, yet the grant of such a right is not to be inferred without an express enactment. The words relied upon here "to erect gates in Manor street or elsewhere, according to the provisions of the original act," are too indefinite ; besides the original act does not speak of Manor street. And the word "elsewhere" is too indefinite to found a right upon. The legislature meant by Manor street nothing more than Manor road.

In the construction of a statute granting privileges to individuals, where there is ambiguity or inconsistency in the language of the grant, if one construction bears against the public trade and convenience, and another abridges the grant ; that must be adopted which favors the public convenience and trade.

ERROR to the Court of Common Pleas of *Lancaster county*.

This was an amicable action of trespass *vi et armis*, on a case stated, in which The Manor Turnpike Road Company was plaintiff, and Jacob Stormfeltz was defendant. The defendant was the supervisor, or street commissioner, of the city of Lancaster, and acting under a resolution of Councils, removed a turnpike gate erected by the direction of the company, within the chartered limits of the city of Lancaster. To test his authority to remove the gate, this action was agreed upon.

The Manor Turnpike Road Company was incorporated by the act of 13th March, 1839. The road, authorized by that act, was to be laid out from the commencement of Manor street, where the same intersects West King street, in the city of Lancaster, *along the said Manor street or road*, to where the Little Conestogo creek crosses the same, &c. The company was invested by the said act with the power of collecting tolls.

A supplementary act was passed 30th March, 1848. The second section directs that the point of commencement of said turnpike road shall be where Manor street intersects West King street, in the city of Lancaster, and shall extend along the Manor road, through the village of Millerstown, &c., with power to erect "gates and toll houses on and across the said road." The fourth section provides that the President and Managers are authorized to erect such toll gates as are necessary, along said road, *either in Manor street or elsewhere*, for the proper collection of tolls, &c.

In February, 1849, the company having erected a toll gate across Manor street, within the chartered limits of the city of Lancaster, with a toll house adjoining, the defendant below, who was then street commissioner of the city of Lancaster, acting under a special resolution of the select and common councils of the city, removed the gate. Before the gate was erected, the company was notified by a resolution of the select and common councils, not

[Stormfeltz *v.* The Manor Turnpike Company.]

to erect a toll gate on Manor street, within the bounds of the city of Lancaster. But no notice was given to the company by the city of Lancaster, or any of its officers, not to construct the road; nor were any objections made to the operations thereon, within the city, until the gate was about being erected, for the purpose of taking toll;—when a resolution was adopted as follows:

"Resolved by Select and Common Councils, that the street commissioner is hereby directed to notify the Manor Turnpike Company not to erect a toll gate in Manor street, within the bounds of the city of Lancaster."

Over three-quarters of a mile of the turnpike road was made by the company, in the city of Lancaster, which it was admitted that the company was bound by law to keep in good order, at no expense to the city of Lancaster.

No formal notice was given to the councils of the city of Lancaster by the company, that it was about to turnpike Manor street, within the city limits; but the acts of assembly, incorporating the company, were duly published.

Manor road, laid out in 1742, is above eight miles long, and for two miles beyond the bounds of the city it is called Manor street, or Manor road. The turnpike company laid their road on this Manor road for about three-fourths of a mile in the city; and for above two miles beyond the limits of the city.

Houses are erected within a short distance of the gate; and beyond the gate, within the bounds of the city, are two large brick yards, owned by citizens of the city.

The charter of the city of Lancaster granted 1st May, 1742, with plan attached—4 May, 1742, Manor road reported on a previous order. Petition for it presented in 1741.

After the revolution, an act was passed 19th June, 1777,—act to re-establish the ancient corporation of Lancaster—reciting that the ancient charter was dissolved by the independence, and restoring the corporate existence.

The opinion of the court below was delivered in favor of the company, and judgment was entered for the plaintiff.

Opinion of Judge Lewis.

It is conceded that the acts of Assembly, under which the plaintiff was incorporated, authorize the erection of the gate in question within the limits of the city of Lancaster, if the legislature possesses the power, under the constitution, thus far to interfere with the rights of the city of Lancaster. The defendant justifies solely under the authority of the city, and his acts were in assertion of the corporate rights of the city alone, and not in maintaining the rights of individuals. The rights of the owners of the soil, on which the turnpike was laid, are not drawn in question in this suit; nor is any question raised, on this record, in regard to any

[Stormfeltz *v*. The Manor Turnpike Company.]

private rights of way, if any exist, which may be claimed by individuals owning land adjoining the road occupied by the turnpike. No doubt is entertained of the power of the legislature to repeal or alter the charter of the city. It is not a private corporation which, standing upon the footing of a contract, is placed beyond the reach of the legislative power. If it were so, it could not be repealed without compensation. The only ground upon which compensation could be claimed by the city, in this case, is that which consists in the expenditure of money partially to grade the road which was taken possession of by the turnpike company; and for this expenditure the use which the inhabitants have had, in travelling along the road, up to the period of its occupancy by the turnpike company, must be deemed an adequate compensation. Under the circumstances of the case we see no such clear violation of constitutional right as to justify the interposition of the court. If any probable inconvenience arises from the act complained of by the city corporation, the fault is with the legislature, and so long as rights are not invaded the courts can give no remedy.

Let judgment be entered for the plaintiff according to the case stated.

Errors assigned.

1. The court erred in rendering judgment against the present plaintiff in error and defendant below.

Because 1. Neither the action of trespass nor any other action can be maintained against the street commissioner, plaintiff in error, for the act thus done by virtue of his official authority.

2. Under the act of 1839 and the supplement of 1848, the company have no right to erect a toll gate within the bounds of the city of Lancaster.

3. If the terms of the act and supplement warrant such a construction of their powers, the legislature has not the constitutional authority thus to interfere with the privileges and immunities of the citizens as guaranteed by the act incorporating the city and its supplements, and the several ordinances passed in pursuance to the corporate powers thus conferred.

The case was re-argued in May, 1850, by *Slaymaker* and *Champneys*, on the part of the city of Lancaster.—It was contended that neither of the acts of assembly, in *express* terms, authorized the company to erect a toll gate within the limits of the city—and that if the construction be uncertain, it should be against the company, and in favor of the public; that the erection of a toll gate directly conflicted with pre-existing rights in the city, and cannot, therefore, be presumed to have been within the contemplation of the legislature. That a right to take toll upon a road, only three miles in length, was not intended to embrace citizens passing over

the road, within the bounds of the city; 2 *B. & Ad.* 793; Prop. Stourbridge Canal *vs.* Wheeley et al., 22 *E. C. L. R.* 185; Priestley *vs.* Foulk. 40 *E. C. L. R.* 319; 2d *M. & G.* 196; 11 *Peters* 545; 4 *Bing.* 448, 15 *E. C. L. R.* 37; 11 *East.* 685; 2 *B. & A.* 646; 1 *Am. Law Jour.* 362; 5 *Denio p.* 9, 17; and Nor. Lib. Gas Company *Amer. Law Journal*, April 1850, p. 457; Trenton Water Company, 6 *Pa. Law Journal* 32; 3 *Rawle* 195, Easton Road. That the term street is equivalent to highway, 4 *S. & R.* 106, Road to Fitzwater street; 8 *Barr* 89 Sharett's road.

It was admitted that the legislature have a superintending power over public corporations, so as to alter the form of government and change the provisions of the charter, thus equally regulating by a *general* law the rights and interests of all the corporators; yet it was denied, that while the charter of the city of Lancaster exists, it is in the power of the legislature to grant to individuals, or to a private corporation, the right to enter the city and occupy and obstruct the streets and levy tolls upon the citizens. That there cannot be "two distinct corporations created in the same place, with the same rights, properties and privileges and similar powers;" *Wilcock on Mun. Corp.* 14, 186; 3 *Steph. Com.* 188 to 198; 2 *Term Rep.* 569, R. *vs.* Amery; 2 *Kyd. on Corp.* 496; 3 *Term Rep.* 246, King *vs.* Passmore; 2 *Bl. Com.* 37; 4 *Wheaton* 539, Dartmouth College *vs.* Woodward, 2 *Kent* 417, 339; 18 *Wend.* 14 to 27; 5 *Denio* 9, 17; Nor. Lib. Gas Co. *Amer. L. J. Apl.* 1850, p. 457; 6 *Paige* 554; 9 do. 171; 6 Greenleaf 112; 10 *Barr* 92; 10 *Ala. R.* 37; 1 *Mass.* 143; 3 *Pa. Rep.* 259.

*Ford* and *Stevens*, for the Turnpike Company.—That the corporation of the city of Lancaster is a public corporation for purposes of municipal government; and that such corporations, as cities, counties and towns, may be changed, modified, enlarged or restrained by the legislature; securing, however, the property for the use of those for whom it was purchased; 2 *Kent* 305; 9 *Cranch* 52; Terrett *vs.* Taylor, 11 *Vern.* 198; Panton Turnpike Company *vs.* Bishop, 4 *Humph. Rep.* 315; 2 *U. S. Dig.* Turnpike 1, 892, 893; 2 *W. & S.* 552.

That there is no limit to the power of the legislature with respect to corporations, except where the grant of corporate rights may be considered as a case of contract; Dartmouth College case, 4 *Wheaton* 539; 2 *Term Rep.* 234.

That if this were not the law, yet the corporation of Lancaster cannot complain. It never had a *right of soil* in the road; and the road had an existence antecedent to the corporation of the city; it having been laid out in pursuance of a petition in 1741, though the report was not made till 4 May, 1742; 10 *John.* 389, The Farmer's Turnpike *vs.* Coventry.

That the road or street was no more than a right of way, and

[Stormfeltz *v*. The Manor Turnpike Company.]

that it was not against Equity to make them pay who use it, and that this is especially applicable to the owners or occupiers of the brick yards, beyond the limits of the city, who were much benefitted by the improvement of the road in question.

The opinion of the court was delivered by

COULTER, J.—The power of the legislature to establish a turnpike gate in the streets or public ways of a city, is hardly to be questioned. It is a part of the eminent domain which belongs to the sovereign authority. It is conceded to the general assembly, by the grant of all legislative power, and is not restrained by the bill of rights. There is nothing in the street, or town, or city, to make it greater or more distinguished than a highway in the rural districts, except convenience and the density of population; and these restrain not the power of legislation. The power of making and repairing roads and removing nuisances is granted by law to supervisors of highways under the direction of the courts, and they are bound to do it; yet this does not prevent the legislature from authorizing turnpikes, and the erection of gates on these roads.— Neither does the obligation of cities to open and repair streets interpose any barrier against the right of the sovereign power to regulate its highways; and streets in a town or city are nothing more.

But the inconvenience to citizens and to other persons transacting business in a city would be so grievous that we cannot presume that the legislature intended to authorize the erection of a gate in the streets of a city, unless the enactment is so clear as to leave no room for a reasonable doubt. The constant passage of drays, wagons, carts and other vehicles, from one part of a city to another, in pursuit of the business, trade, agriculture and commerce of the country, requires that the streets should be open. In many places the stoppage to pay tolls would block up and stop the streets, and as the toll gatherer would have to seek shelter from the vicissitudes of the weather, a barrier would at times be interposed with no person at hand to open it. In the case under consideration, although the gate is at the verge of the continuous line of houses, yet if the company can erect it there, they may erect a gate as far up the city as King street. It was well known to the legislature that the city of Lancaster, in the garden of the State, would, in process of time, become a mart for manufactures and commercial and agricultural products, and extend to its utmost limits. Where then was the necessity or propriety of granting, to a turnpike company, the privilege of obstructing the streets and hindering the business of the city, when full power was granted to the municipal corporation to keep those streets open and in good repair, and which it was compellable to do, at the instance of any person. We are reluctant to impute any such intention to

the legislature, until they use words of more imperative and distinct signification than those on which the turnpike company relies. We have no doubt whatever that the legislature may alter, modify or repeal the charter of a city, making compensation for private rights, which might thereby be invaded or destroyed. But when they intend to do so, it is but fair to the municipality and to the public to presume that they will say they intend to revoke privileges already granted, and alter a solemn deed already made.

In the construction of a statute granting privileges to individuals, where there is ambiguity or inconsistency in the language of the grant, if one construction bear against the public trade and public convenience, and another abridges the grant, that must be adopted which favors the public convenience and trade; 3 *Stephens, N. P.* 2619; 5 *Denio.* The enjoyment of the franchise or privilege granted to the turnpike company, does not necessarily require that a gate should be erected in Manor street, within the city limits. By placing a gate outside the city, the object of their erection will be fulfilled, and the convenience and business of the city protected, and both grants, that to the city and to the turnpike, will be harmonized.

The whole force of the turnpike company's case rests on the words used in the reviving act of 30th March, 1848, by which the company is authorized to erect gates in Manor street or elsewhere, for the purpose of collecting tolls, according to the provisions of the original act. Now the original act does not authorize or speak of gates on Manor *street*, but authorizes the company to erect " gates on *said road.*" It might be sufficient to say that the words street and highway are equivalent to each other, as decided in 4 *S. & R.* 106, and in 2 *Strange* 1004, Lade *vs.* Shephard. They are considered as convertible terms. Street is derived from the Saxon, and in its origin, signifies a way. It is often used to signify a way on the margin of which houses are built; but it is used to signify a highway out of a city or town : " wisdom crieth without, she uttereth her voice in the streets, and in the city she uttereth her words." We think that the legislature meant by the words *Manor street*, nothing more than Manor road, which the way was called at least as far as Millerstown; and that by the word "elsewhere," which is a very loose designation of any place, they meant that part of the road which lies between Millerstown and the Lake Mill, on Conestogo creek, which part of the road they were authorized to commence after the road to Millerstown was completed.

We are therefore of opinion that the city of Lancaster, having given full notice to the turnpike company not to erect a gate on Manor street, in said city, were guilty of no wrong in ordering it to be removed, as a nuisance or obstruction in said street; and that Stormfeltz, the street Commissioner, was not guilty of a tres-

pass in removing the said gate in pursuance of an ordinance of the city councils.

Wherefore the judgment of the court below, on the stated case, is reversed, and judgment is entered for the defendant in the said case.

Judgment reversed, and judgment for defendant below.