## BOSTON AND MAINE RAILROAD *vs.* LOWELL AND LAWRENCE RAILROAD COMPANY.

Suffolk.   Jan. 21. — April 15, 1878.   ENDICOTT & LORD, JJ., absent.

The St. of 1874, c. 372, §§ 23–31, authorizing persons, incorporating themselves for the purpose, to construct a railroad, or an existing railroad corporation to construct an extension, upon submitting a map and profile of the proposed route, (first ob taining the approval by the board of railroad commissioners of any crossing of another railroad at the same level therewith,) to the selectmen of any town, and

the mayor and aldermen of any city, through which the road passes, and agreeing with them as to the route in that town or city, does not authorize a railroad to be constructed, without express grant from the Legislature, within the legal location, not exceeding five rods in width, of the railroad of another corporation, appropriated by that corporation to purposes incident to the proper construction, maintenance, management and use of its road for the transportation of passengers and goods.

GRAY, C. J. This is a bill in equity to restrain the defendant corporation from locating and constructing an extension of its railroad in the city of Lawrence, within and along a part of the location of the plaintiff's railroad, and over land purchased by the plaintiff for depot and station purposes.

The original location of the plaintiff's railroad was filed in 1847, under the St. of 1846, *c.* 75. Although the description and plan of that location do not furnish sufficient means for fixing the boundaries thereof with absolute accuracy, without reference to the lines of the railroad as constructed, it appears that the lines and curves of that location correspond with those of the railroad as constructed soon afterwards and since maintained. and the court concurs with the master in the conclusion that the central line of the railroad, as constructed, is substantially the same as the centre line intended by the location of 1847. The width of that location at the place now in question was five rods at one end and thence narrowing to four rods at the other.

Within that location, the plaintiff laid its tracks, and in 1850 built two signal-houses which have been since constantly used to govern the movement of the plaintiff's trains into and out of Lawrence; and before 1855 constructed and has since used a platform for unloading freight, a storehouse, a paint-shop and a carpenter's shop, partly within that location and partly upon a parcel of land adjoining, purchased by the corporation in 1848, and used for depot and station purposes and for other buildings required for the use of the railroad. The purposes to which the land within that location was appropriated being incident to the proper construction, maintenance, management and use of the railroad for the transportation of persons and goods, the land covered by the location was held by the corporation under its franchise for the public use in such a perfect sense that it would not even be liable to taxation. *Worcester* v. *Western Railroad,*

4 Met. 564. *Commonwealth* v. *Haverhill*, 7 Allen, 523. St. 1874, *c.* 372, § 62.

The St. of 1855, *c.* 141, authorized the plaintiff to make and file an amended location of its road, not exceeding five rods in width, on any land actually in its possession ; and provided that " such amended location shall not be a waiver of or impair any rights they now have," and that " the route selected by said railroad in Lawrence for the construction of its road is hereby confirmed." The existing rights of the plaintiff under the old location were thus preserved in full force, notwithstanding that the new location filed under the St. of 1855, and which was wholly within the old location, was only forty feet wide at this place.

The location of the proposed extension of the defendant's railroad, of which the plaintiff complains, is twenty-six feet wide, crosses upon a level two branches of the plaintiff's railroad about a quarter of a mile apart, and, at these crossings and for the whole distance between them, is for a small portion of its width upon the plaintiff's depot and station grounds, but for the greater part of its width along and within the plaintiff's location of 1847, and includes a great part of the signal-houses, of the storehouse, of the paint-shop and carpenter's shop, and of the freight plat-form, above mentioned. The construction of the proposed extension of the defendant's railroad will be a serious injury to the plaintiff, and will greatly interfere with its necessary use of the aforesaid tracks, signal-houses, repair-shops, freight platform, and other structures for railroad purposes.

The principal question in the case is whether the proposed extension is justified by the General Railroad Act of 1874, *c.* 372, §§ 23–31. The defendant (after obtaining the written approval of the railroad commissioners, assuming to act under § 85, to " the proposed crossing " at grade of the plaintiff's railroad) has agreed with the mayor and aldermen of Lawrence, under § 25, that the route of the extension shall be as above stated.

The general principle is well settled, and has been applied in a great variety of cases, that land already legally appropriated to a public use is not to be afterwards taken for a like use, unless the intention of the Legislature that it should be so taken has been manifested in express terms or by necessary implication.

For instance, a highway cannot be laid out across a navigable river without authority of the Legislature, and such authority is not to be implied from a general statute empowering courts of sessions or county commissioners to lay out highways. *Commonwealth* v. *Coombs,* 2 Mass. 489. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 494, and other cases there cited. In *Commonwealth* v *Coombs,* Chief Justice Parsons said: " The statute gives a general authority to the Sessions to lay out highways; but the statute must have a reasonable construction. This authority therefore cannot be extended to the laying out of a highway over a navigable river, whether the water be fresh or salt, so that the river may be obstructed by a bridge. A navigable river is, of common right, a public highway; and a general authority to lay out a new highway must not be so extended as to give a power to obstruct an open highway already in the use of the public." 2 Mass. 492.

Upon the same principle, it was held that commissioners of highways could not, under the general power of laying out highways, lay out a highway longitudinally for thirty rods over a turnpike. *West Boston Bridge* v. *County Commissioners,* 10 Pick. 270. *Commonwealth* v. *West Boston Bridge,* 13 Pick. 195. For other applications of the general principle, see *Wellington, petitioner,* 16 Pick. 87, 105 ; *Boston Water Power Co.* v. *Boston & Worcester Railroad,* 23 Pick. 360, 398 ; *Proprietors of Locks & Canals* v. *Lowell,* 7 Gray, 223 ; *Fall River Iron Works* v. *Old Colony Railroad,* 5 Allen, 221, 229.

So it has been held that a special charter from the Legislature, authorizing a corporation to lay out and locate a railroad between two places named, does not confer authority to lay out the railroad upon and along an existing highway, unless it is reasonably necessary to the enjoyment of the franchise granted and the railroad cannot by reasonable intendment be laid out on any other line. *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63. *Commonwealth* v. *Old Colony Railroad,* 14 Gray, 93. In *Springfield* v. *Connecticut River Railroad,* Chief Justice Shaw said: "As no company or persons have authority to lay out a railroad, except so far as such power is conferred by the Legislature, the court are of opinion that by a grant of power by a legislative act to lay out a railroad between certain termini,

where the precise course and direction are not prescribed, but are left to the corporation to be located between the termini, no authority is given *primâ facie* to lay such railroad on and along an existing public highway longitudinally, or, in other words, to take the road-bed of such highway as the track of their railroad. The two uses are almost, if not wholly, inconsistent with each other; so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated. The whole course of legislation on the subject of railroads is opposed to such a construction. The crossing of public highways by railroads is obviously necessary, and of course warranted; and numerous provisions are industriously made to regulate such crossings, by determining when they shall be on the same and when on different levels, in order to avoid collision; and when on the same level, what gates, fences and barriers shall be made, and what guards shall be kept to insure safety. Had it been intended that railroad companies, under a general grant, should have power to lay a railroad over a highway longitudinally, which ordinarily is not necessary, we think that would have been done in express terms, accompanied with full legislative provisions for maintaining such barriers and modes of separation, as would tend to make the use of the same road, for both modes of travel, consistent with the safety of travellers on both. The absence of any such provision affords a strong inference, that, under general terms, it was not intended that such a power should be given." 4 Cush. 71.

The same principle has been applied to the laying out of one railroad within the location of another already existing. In *Housatonic Railroad* v. *Lee & Hudson Railroad*, 118 Mass. 391, the court said: " A charter to build and maintain a railroad between certain points, without describing its course and direction, but leaving that to be determined and established by the corporation, as provided by the general laws, does not *primâ facie* give any power to lay out the road over land already devoted to, and within the recorded location of, another railroad. It is not to be presumed that the Legislature intended to allow land thus devoted to one public use to be subjected to another, unless the authority is given in express words or by necessary implication. And such implication can only be found in the language of the

act, or from the application of the act to the subject matter, so that the railroad could not be laid, in whole or in part, by reasonable intendment, on any other line." And in *Worcester & Nashua Railroad* v. *Railroad Commissioners*, 118 Mass. 561, under the statute establishing the Union Passenger Station in the city of Worcester for five railroad corporations, and providing that one of them " may extend its railroad to said Union Passenger Station, and for that purpose may locate, construct and maintain its railroad within the location of any other railroad corporation in said city, at such places and upon such terms as the parties agree, or, in case of disagreement, as the board of railroad commissioners determines," it was held that that board had no power to authorize the corporation named to take as well as to use land within the location of another railroad in the city.

The decisions to which we have referred clearly show that an authority conferred by the Legislature, in general terms, upon public boards or officers, to determine or control the location of a highway or a railroad, is not to be construed as authorizing them to order or consent that it shall be laid out along and within the location of a turnpike, a highway or a railroad, already established.

The material provisions of the General Railroad Act of 1874, *c.* 372, concerning the formation of railroad corporations and the construction and extension of railroads, are as follows:

By § 19, twenty-five or more persons, a majority of whom are inhabitants of the Commonwealth, may associate themselves together, by articles in writing, with the intention of forming a railroad corporation, and, upon complying with the provisions of § 29, shall be a corporation. By § 20, the articles of association must, among other things, " set forth the name of the corporation ; the termini of the railroad proposed to be built ; its length as near as may be, and the name of each city, town and county through or into which its route extends." And by § 22, a copy of the articles of association is to be published and posted three weeks " before proceeding to fix the route of said road."

Section 23 requires the directors to prepare a map and profile of the proposed route, with the report of a skilful engineer, showing the manner and cost of constructing the road, and, among other things, " the proposed grades, the number of high-

ways and other railroads, if any, and of navigable streams and tide waters, if any, to be crossed, and the manner proposed for crossing the same, which must be conformable to the provisions of section eighty-five."

By § 85, thus referred to, "no railroad shall be constructed to cross another railroad at the same level therewith, without the consent in writing of the board of railroad commissioners, or across navigable or tide waters, without the consent in writing of the harbor commissioners, and in such manner as they shall prescribe;" and no proceedings are to be taken for the purpose of constructing a railroad conformably to § 19, or a branch or extension, "contemplating a new crossing of one railroad with another at the same level therewith, unless such crossing shall first have been approved in writing by the board of railroad commissioners; and the preliminary approval of any plan for such crossing shall always be made subject to revision by the board."

By § 24, the directors shall submit such map and engineer's report to the selectmen of any town and the mayor and aldermen of any city through which the proposed route is to extend, who shall thereupon appoint a place and time for a hearing and give public notice thereof. By § 25, if the selectmen or mayor and aldermen, after such notice and hearing, agree with the directors as to the route of the railroad in that town or city, such agreement is to fix the same, and the selectmen or mayor and aldermen are to sign a certificate thereof. By § 26, if the directors fail so to agree with the selectmen or mayor and aldermen, the directors "may petition the board of railroad commissioners to fix the route in said town or city, who, after due notice to said selectmen or mayor and aldermen, shall hear the parties and fix the route in such town or city," and make a certificate accordingly; and all variations from the route first proposed are to be made upon the map.

By § 27, "the route of a railroad fixed under the two preceding sections may include such spurs and branches and connecting and terminal tracks in any city or town as may be necessary to enable the corporation to conveniently collect and deliver passengers and freight in such city or town; but no such branch, spur or connecting or terminal track shall be laid longitudinally

within the limits of a public way, without the consent of the mayor and aldermen or the selectmen, and, in giving such consent, they may impose such conditions as to the location, construction and use thereof as may be agreed upon between themselves and the directors."

By § 29, the railroad commissioners, upon being satisfied that the requirements of this act preliminary to the establishment of a railroad corporation have been complied with, are to so certify upon the articles of association, and those articles, with all the certificates indorsed thereon, are to be filed and recorded in the office of the secretary of the Commonwealth, who is thereupon to issue and record a certificate which shall be conclusive evidence of the establishment of the corporation. And by §. 30, upon the issue of this certificate, the corporation may proceed to organize itself, and to locate, construct and maintain the railroad upon the route already fixed.

By § 31, " a railroad corporation, after having finished the construction of its main road and put the same in operation, may build branches or extensions of its railroad at any time in accordance with the provisions of this act regulating the construction of railroads."

It is further provided by § 33, that if any persons shall present to the Legislature a petition for an act of incorporation for the purpose of constructing a railroad, they shall conform to the provisions of the Gen. Sts. *c.* 63, §§ 13–16 ; " and the routes of railroads hereafter constructed, including branches and extensions, shall be fixed according to the provisions of sections twenty-five and twenty-six of this act, excepting so far as the route of such railroad, branch or extension may have been already fixed by some special act."

The reasons, upon which it has been held that a legislative grant to a particular corporation of a franchise to construct a railroad between two points fixed by the Legislature is not to be presumed to authorize the corporation to construct its road within and along the location of another railroad already established, apply with increased force to a corporation constructing, under a general law, a railroad whose termini are fixed by the corporation itself, and whose route is not determined or controlled by any public body having jurisdiction throughout the Commonwealth.

The power of the mayor and aldermen under §§ 24, 25, to fix the route of a proposed railroad, is limited to their own city. If they come to an agreement with the directors as to the route within the city, the route is so far fixed. It is only when they fail so to agree, that the directors may apply to the board of railroad commissioners, and then the only matter to be submitted to that board under § 26 is the route within that city, and the mayor and aldermen thereof are the only adverse party that is to be notified or to be heard. In short, the mayor and aldermen in this, as in other matters, act as guardians of the interests of their own city only, and not as judges of the rights of railroad corporations already established.

The duty, required by § 85 to be performed by the board of railroad commissioners, as a preliminary to the submission of the proposed route to the municipal authorities, relates only to the crossing of one railroad by another at the same level therewith. Neither in this section, nor in any other part of the statute, has the Legislature delegated to that board, or to any other tribunal, the authority to determine whether it is consistent with the public interest that a new railroad should be laid out along and within the prior location of another. The omission is made the more significant by the express grant in § 27 to the municipal authorities of power to consent to the laying out of spurs, branches and connecting and terminal tracks, " longitudinally within the limits of a public way," for the convenient collecting and delivery of passengers and freight within their city or town.

The learned counsel for the defendant relied, as supporting his position, upon § 71, which authorizes the county commissioners to change the location of a railroad on the application of any owner of land unnecessarily injured thereby. But that section, taken in connection with § 70, to which it refers, does not appear to have been framed with regard to the rights of other railroad corporations ; and the entrusting to county commissioners of a power to deal with such rights is so unusual, that it should not be extended beyond what is clearly expressed. *Boston & Albany Railroad* v. *County Commissioners*, 116 Mass. 73.

Much stress was also placed on the St. of 1875, c. 163, which prohibits the laying out or construction of any highway, town way, street, turnpike, canal, railroad or street railway, over a

public common or park, without a vote of the inhabitants of the city or town, or over lands of any public institution belonging to the Commonwealth, without leave of the Legislature — as implying that all other property devoted to public purposes might be taken under the general laws for a highway or a railroad. But the more reasonable inference appears to us to be that, so far as interference with existing highways and railroads, either by crossing or lengthwise, was concerned, the Legislature considered the law to be already clearly and sufficiently defined by the statutes and decisions.

Upon full consideration of the subject, with the assistance of the able arguments at the bar, we are unanimously of opinion that the General Railroad Act of 1874 does not contemplate or authorize the laying out of a railroad longitudinally within the location of another, except under an express legislative grant in accordance with § 33.

That part of the new location of the defendant's road, of which the plaintiff complains, being therefore illegal, because it is mostly within the location of the plaintiff's railroad, it is unnecessary to consider whether the mayor and aldermen could lawfully authorize a new railroad to be laid out wholly upon the station grounds outside of the location of the plaintiff's railroad, or what is the effect of the location of those station grounds which has been filed by the plaintiff since the commencement of this suit.                    *Decree for the plaintiff.*

*E. R. Hoar & C. F. Choate*, for the plaintiff.

*J. G. Abbott*, (*J. H. George*, of New Hampshire, with him,) for the defendant.