# APPEAL OF W. W. GROFF, ET AL.

## [ GROFF ET AL. v. BIRD-IN-HAND TURNPIKE CO.]

### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, IN EQUITY.

Argued May 29, 1889—Decided October 7, 1889.

[To be reported.]

1. Property devoted to public use, including franchises, may be taken under the right of eminent domain for other public uses, but it cannot be so taken without legislative authority expressed in clear terms or necessarily implied.
2. In construing a grant of corporate authority, the fact that a particular power is omitted from those enumerated in the charter, is to be given the effect of a prohibition against its exercise, unless there be an imperative implication of its inclusion.
3. A turnpike company, incorporated under the act of April 29, 1874, P. L. 73, by a charter which specifies the termini of its roadway but is silent as to the intermediate route, cannot appropriate an existing public highway, merely to avoid the expense of acquiring a new route through private property.
4. That such existing highway is in bad condition for travel, is no just ground for the exercise of the right, upon a proposal to substitute a better road therefor; it is the necessity for the new use, not the inadequate condition of the old road, that is the test of the power.
5. Whether the act of April 29, 1874, would authorize the issue of a charter granting an express power to take other corporate property or franchises, except incidentally and to such an extent only as would not destroy or impair the existing public use, not decided.
6. The rule that only irreparable injuries may be enjoined, has no application to acts, especially corporate acts, entirely without authority, for which there is no adequate measure of damages at law; and equity will enjoin the unauthorized appropriation of a public road by a turnpike company, though irreparable damage 'may not result therefrom to any one.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 92 July Term 1889, Sup. Ct.; court below, Equity Docket No. 2, page 271; C. P. in Equity.

On October 5, 1885, W. W. Groff, Peter Dorsheimer and Andrew Johe filed in the court below their bill in equity against the Bird-in-Hand Turnpike Company, praying for an injunction to restrain the defendant company from constructing a turnpike road upon and over a certain public road in the township of East Lampeter, Lancaster county, commonly known as the Old Philadelphia Road. The defendant made answer, asserting a right under its charter to appropriate the old Philadelphia road for the purpose of building its turnpike road thereon, and denying that the plaintiffs would sustain any injury by reason of such appropriation. The pleadings are more fully stated in the master's report.

On October 3, 1887, by agreement of all parties interested, the court appointed *Mr. George N. Kline*, examiner and master. At the hearings before him, the plaintiffs offered no testimony upon the question whether the turnpike road of the defendant company could have been constructed upon any route other than the bed of the old Philadelphia road; but for the defendant, several witnesses testified that the route adopted was the only feasible and practicable one, and that any other route would have necessitated the destruction of valuable improvements on private property, causing great damage to property owners. Calvin Cooper, a civil engineer, testified that the turnpike road occupied very nearly a direct line between its termini; that if built on a perfectly straight line, it would have been shorter and would not have occupied the bed of the old road, but that this would have necessitated going on private property and destroying private buildings, and to avoid destruction of valuable improvements the company would have been obliged to diverge very far from a straight line; that to build a turnpike road on any other practicable route would have cost from $40,000 to $50,000, a sum greater than the amount of the capital stock; that both to the north and to the south of the line of the old Philadelphia road engineering difficulties would be encountered, such as steep grades in some places, marshy ground in others, railroad crossings, and the necessity of crossing a mill dam; and that it was not feasible and practicable to construct a road on any other route than the one adopted.

The master's report, filed January 19, 1889, was as follows:

## Master's Report.

The examiner and master respectfully reports the following abstracts of the bill and answer. The bill, as amended, charges:

1. That the complainants are taxpayers and inhabitants of East Lampeter township, in the county of Lancaster and state of Pennsylvania, owning real estate adjoining what is known as the Old Philadelphia Road, in the said township; the said road being a public highway, laid out by law, and used as such for many years, and kept up and maintained by the supervisors of the townships through which it runs.

2. That the Bird-in-Hand Turnpike Company is a corporation organized under the act of April 29, 1874, P. L. 73, on letters patent issued to it September 21, 1885, for the purpose of building a turnpike road in said township, commencing at a point at the terminus of the Bridgeport and Horse Shoe Turnpike, in said township, and ending at the township line, between East Lampeter and Leacock township, in Lancaster county, near the village of Bird-in-Hand.

3. That the said defendant has, without any authority whatever, entered upon the said the old Philadelphia road, and is about to appropriate it, between the said terminal points, for the purpose of building its turnpike road upon it.

4. That if the said defendant is permitted to so appropriate the said old Philadelphia road, the complainants and a vast number of other citizens of East Lampeter township and county of Lancaster, will not be permitted to travel over the said road free and uninterrupted, as is their right, but will sustain great and irreparable injury, utterly incapable of being compensated at law.

5. And pray that the said Bird-in-Hand company and its officers, etc., be enjoined from proceeding in its intended purpose of constructing a turnpike road, under its charter, on and over the said public road, on a portion of which the said defendant has already entered.

The answer filed by the defendant company sets forth:

1. It neither admits nor denies the facts in the plaintiffs' bill, 1st paragraph, and demands exact proofs thereof.

2. It admits the facts set forth in the 2d paragraph.

3. It admits that it has entered upon the said old Philadelphia road, and has appropriated it between the said terminal points, for the purpose of building its turnpike road upon it,

but denies that it has done so, or is about doing so, unlawfully and without authority. It asserts its right to do so by its charter. It alleges, that to build a turnpike between the terminal points, it is necessary to lay it over the bed of said old Philadelphia road, said road being the shortest and only feasible and practicable route or line for a turnpike between said terminal points; that such pike must be laid either on the bed of said old Philadelphia road, or, by diverging widely from a straight line, in order to prevent destroying many valuable improvements along the line of said old road; that, by adopting the line of said old road, no injury would be done to any person or property, while the adoption of any other line would result in very serious injury to a large number of people, and be destructive of very valuable property.

4. It admits that, after completing said turnpike, travelers over it will be obliged to pay tolls; and denies that the complainants and others will sustain great and irreparable injury, utterly incapable of being compensated at law, or that they will sustain any injury whatever. It avers, that the construction of said turnpike on the bed of said road will be a benefit to the complainants and all others having occasion to use the road, in that they will not be required to pay any taxes to keep the said old road in repair, and will have a smooth, substantial, solid road to travel on at all seasons of the year, instead of the present clay road, which, at some seasons of the year has been heretofore well nigh impassable on account of the softness and miry character of its bed:

Concluding with the prayer that the bill may be dismissed with costs.

### FINDINGS OF FACT.

The Bird-in-Hand Turnpike Company was chartered under the act of April 29, 1874, by letters patent, issued on September 21, 1885. At the hearing before the proper authorities at Harrisburg, the applicants for the charter and the objectors were heard by their respective attorneys. The application, with the direction that letters patent issue, appear of record in Lancaster county in Charter Book No. 1, p. 30. The only clause necessary to be quoted is the second, defining the object of the corporation, and is as follows:

" Said corporation is formed for the purpose of constructing

and maintaining an artificial road or turnpike, of stone, gravel or earth, to commence at a point at the terminus of the Bridgeport & Horseshoe Turnpike, in East Lampeter township, in the county of Lancaster, and ending at the township line between East Lampeter and Leacock townships, near the village of Bird-in-Hand, a distance of about three and one half miles. The whole of said proposed road is in Lancaster county."

The capital stock was fixed at $20,000, divided into 800 shares of $25.

Soon after the grant of the letters, the directory located the turnpike, appropriating for that purpose the bed of the old Philadelphia road, all of which lies between the terminal points of the charter, a distance of three miles and 1,453 feet, and commenced work immediately thereon. The old Philadelphia road has been a public highway since 1733, being laid out by viewers appointed by the Governor and Council of Pennsylvania on a petition presented in 1730–1. A return made in 1733, by courses and distances, from the city of Lancaster to its intersection with the King's Highway, leading from Chester to Philadelphia, was approved by the Governor and Council, and the records certified to the courts of the respective counties, October, 1733, and by the court of Lancaster ordered to be opened: See Rupp's History of Lancaster County, 262; Mombert's History of Lancaster County, 134; III Colonial Records, 521; Road Docket of Lancaster County, No. 1, from 1729 to 1742, p. 104.

The plaintiffs' bill was filed October 5, 1885, seeking to restrain the defendant, and only after nearly $9,000 had been expended in building the road, being almost half the cost of the entire superstructure. After the bill was filed the defendant proceeded to the completion of the road, and then asked the court to appoint viewers to examine and report upon the same, who returned that the turnpike was built in a competent and workmanlike manner, and recommended that the court grant the company the right to erect gates and collect and receive tolls. Application was then made to the court for this authority.

At this point the court divided in opinion on the status of the case, and this resulted in sending it to the undersigned master for examination and report upon the rights of the parties.

The master, from the testimony before him further finds:

### Master's Report.

1. That the old Philadelphia road, in the summer season, when not rainy, was a good road, with easy grade, with but few exceptions.

2. That at other seasons, from the late fall until sometime in the spring, a period running from four to six months, the road was at times almost impassable, if the period was rainy, by reason of the soft and miry character of its bed, when the road would be badly cut up; and then when the ground would be frozen, was hard, rough and very difficult to travel over.

3. The road is located in one of the most thickly populated parts of Lancaster county, and has a large amount of travel and hauling over it from all surrounding points. The Pennsylvania Railroad has a prominent station and warehouse at Bird-in-Hand, close to its eastern terminus.

4. The line adopted for the pike is very nearly direct between the termini, is on the bed of the old Philadelphia road, and along its entire route interferes with no private property.

5. [ Draft No. 2, and the evidence, show it to be the only feasible, reasonable and practicable route between the termini. Any other route would have diverged either to the north or to the south.] [1] The character of the surrounding country, on the south, is hilly near the creek, soft, and the hills steep. Near the eastern terminus, it would meet the railroad where there is a fall of about twelve or fourteen feet. On the north, the railroad (Pennsylvania) would be met at several places, to be crossed above or under grade; at Mill creek a dam to be crossed, and from that eastward to the terminus low ground, and would have been exceedingly injurious to private property.

6. [The change in the road from a highway to a turnpike will not work great and irreparable injury to the plaintiffs and others using said road. The pike gives a good and substantial road, ready for all uses, in all seasons of the year. It works no injury or damage to any one.] [2] The only change the turnpike makes is the substitution of tolls for taxes, and thus throws the burden of maintenance upon *all* who use it, without regard to residence, while, as a public highway, that burden must be met by the inhabitants of the township through which it passes.

7. [The change in the old road, from a public highway passing through a rural district to a turnpike, makes no change in the use of the road. The turnpike will be used for the same

Master's Report.

purposes and by the same modes of inter-communication as the old Philadelphia road had been.][3]

CONCLUSIONS OF LAW.

Under these facts, the question arises, has the defendant company under its charter, a right to appropriate the bed of the old Philadelphia road, for the purpose of building an artificial road or turnpike thereon?

The charter gives explicitly the termini. The road or pike to be built must be between these two points. It is silent as to the intermediate route. It does not grant the right, by express words, to take and occupy the bed of the old road, for the purpose of constructing the new one. Neither does it exclude or prohibit this defendant company from so doing. The question of location is left open to the judgment and sound discretion of the company, acting faithfully upon all the circumstances and necessities of the case, and " will not be revised by the court, unless it appears that they have clearly exceeded the limitations of the charter and have acted in bad faith : " Mills on Em. Domain, § 62, 2d ed. If, therefore, the power to appropriate, as was done in this instance, exists at all, it is the result of necessary implication ; of a necessity which arises from a state " of things over which the corporation has no control."

[In selecting the bed of the old Philadelphia road, and appropriating it to the uses of the new company, the latter appears to have been guided by the legislative requirements in relation to the laying out of public roads and highways, " having respect to the shortest distance and the best ground for a road, and in such a manner as shall do the least injury to private property : " Act of June 13, 1836, § 2, P. L. 555.][4]

There is no change in the use of the road. It is not like the change of a highway into a railroad. The turnpike will be used for the same purposes, and by the same modes of inter-communication as the old road had been, transit over on foot, by horse, in carriage, by wagons, and other mediums of transportation usually used on public highways. It is still a highway, and the land does not revert to the owner. It is not an additional burden on the old public road. The only change in its operation is the payment of tolls instead of taxes, and this is only a change in sustaining the road, and not a change of use. For such a change the adjoining owners are not en-

titled to compensation. In the rural districts, such as this is, through which this turnpike passes, they still own the land to the centre of the same, and the corporation, like the public, over the old road has but an easement or right of way : Mills on Em. Domain, § 34. [The appropriation of the old road injures no one,] [5] but on the contrary furnishes a good, substantial macadamized road that can be used in all seasons of the year to the great comfort and convenience of the public, in place of one which, in many parts, for an average at least of one third of a year is almost impassable and extremely burdensome in its use.

There is no difference in a charter, whether granted specially by the legislature, or granted under a general law of the state : Cochran v. Arnold, 58 Pa. 405. In Commonwealth v. Railroad Co., 27 Pa. 354–5, BLACK, C. J., says : " Of course, when the power is given in express words, there can be no dispute about it. It may also be given by implication; for instance, if a company be authorized to make a railroad by a straight line, between two designated points, this implies the right to run upon, along or across all the streets or roads which lie in the course of such line. So, also, when an act of incorporation directs a road to be made between certain termini, by such route as the grantees of the privilege shall think best, it may be located on an intervening street or other common highway, if, in the judgment of the directors, it be necessary or expedient to do so. But, when an act of incorporation authorizes the making of a railroad, which it is not possible to make without using the streets of a town for part of it, still such streets cannot be so used, if the same act of incorporation forbids it. If the powers given to the corporators cannot be executed without disregarding the restrictions with which they are coupled, they cannot be executed at all." In the charter of this company there is no restriction of any kind.

" In determining whether a power, generally given, is meant to have operation on lands already devoted by a legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which the use would be impaired or diminished by the taking of such part of the land as may be demanded by the subsequent public use. . . . . . If an implication is to be

relied upon, it must appear from the face of the enactment, or from the application of it to the particular subject matter of it, so that by reasonable intendment some especial object sought to be attained by the exercise of the power granted, could not be reached in any other place or manner:" City of Buffalo, 68 N. Y. 167.

The master, on the facts found, and the law governing the case, as he conceives it to be, finds that the corporation defendant, [the Bird-in-Hand Turnpike Company, has not "unlawfully and without any authority whatever," entered upon the " Old Philadelphia Road," and appropriated it between the terminal points specified in its charter; but, on the contrary, he finds that its entry upon and appropriation of that part of the "Old Philadelphia Road," for the purpose of building its turnpike road upon it, was lawful, and with authority under its charter.] [6]  [He therefore recommends to the court a decree dismissing plaintiffs' bill, at their costs, with a further decree, that the defendant have permission to erect toll-gates upon the line of their road, and receive and collect such tolls as the law authorizes.] [7]

To the foregoing report various exceptions were filed by the plaintiffs, which the master overruled. The plaintiffs thereupon filed in court exceptions specifying that the master erred:

1–6. In his findings and conclusions in [  ] [1 to 6]

7. In reporting the decree recommended by him.[7]

8. In not recommending a decree in accordance with the prayer of the plaintiffs' bill.

The court after argument overruled the exceptions filed, confirmed the report, and entered the decree reported by the master, PATTERSON, J., saying: " The master took some thirty-seven or more pages of testimony from which he found the facts submitted in his report. We have read the report, and his application and conclusions of the law on the same, and the whole case of the plaintiffs in their bill as it appears to the court, affords no ground for the injunction. Therefore, let the decree reported by the master dismissing plaintiffs' bill at their costs be confirmed." [9]

The plaintiffs thereupon took this appeal specifying that the court erred:

1–8. In overruling the exceptions to the master's report.[1 to 8]

9. In confirming the report of the master and dismissing the bill.[9]

*Mr. W. U. Hensel* (with him *Mr. J. Hay Brown, Mr. B. F. Davis* and *Mr. H. M. Houser*), for the appellants:

1. There is no difference in the construction of charters granted specially by the legislature and those granted under a general law: Cochran v. Arnold, 58 Pa. 405. To ascertain the powers of this corporation, we must therefore resort to the same tests that have been judicially applied to legislative grants of corporate authority. It is well settled that such grants are to be construed strictly, and all acts beyond what the corporation is authorized to do by plain words or necessary, implication, are illegal: Commonwealth v. Railroad Co., 27 Pa. 339; Miami Coal Co. v. Wigton, 19 Ohio 566; Currier v. Railroad Co., 11 Ohio 231. This is especially true in the case of a public grant which interferes injuriously with another grant previously made: Packer v. Railroad Co., 19 Pa. 211. It is such a grant which this corporation claims to have.

2. It is not pretended that a right to take and occupy the old road is expressly given to the defendant. The master, however, says that the charter does not exclude or prohibit its appropriating the old road. But this is not enough. Since the decision in Commonwealth v. Railroad Co., 27 Pa. 339, it has been uniformly held that such a power must either be expressly granted or unmistakably appear to be necessarily implied: Harvey v. Railroad Co., 47 Pa. 436; Penna. R. Co.'s App., 115 Pa. 517. The circumstances from which the master sought to deduce the power by necessary implication do not sustain it. That the old road is in bad condition during part of the year, may show that the supervisors ought to be indicted, but does not justify the appropriation of it as a toll road, for private gain. If it did, there is no reason why a city street, allowed to remain in bad condition, should not be appropriated likewise.

3. The findings of the master that the road is located in a thickly populated district, leads to a prominent railroad station and has much travel on it, go far to suggest not only that the road should be free, but that, as such, it can be maintained in

passable condition. And the finding that a divergence by the defendant from the line of the old road would have involved greater difficulty and expense, does not justify the decree. We join issue with his findings of fact in this connection. It nowhere appears that the old road is the only route that can be found. The testimony shows that it is not on a straight line between the points given; that no natural obstacle intervened to obstruct another route, and that the adoption of the old road was simply for the convenience of the corporation, and to save the cost of buying a right of way through private property.

4. The master should not have allowed such considerations to outweigh the destruction of an important franchise of the public. He is not supported in his position by his quotation from § 2, act of June 13, 1836, P. L. 555. That is a direction to viewers appointed to lay out public roads, for which damages are to be paid by the public. Attempts to appropriate franchises for similar reasons have been repeatedly condemned by this court: Commonwealth v. Railroad Co., 27 Pa. 339; Cake v. Railroad Co., 87 Pa. 307; Penna. R. Co's App., 93 Pa. 150; Stormfeltz v. Turnpike Co., 13 Pa. 555; Tyrone Sch. District's App., 22 W. N. 513; and see Mills on Em. Domain, *46, 47; §§ 35, 45, 46; Housatonic R. Co. v. Railroad Co., 118 Mass. 393; The Matter of Buffalo, 68 N. Y. 167; Lewis on Em. Domain, 270, 276; Milwaukee R. Co. v. Fairbault, 23 Minn. 167; Prospect R. Co. v. Williamson, 91 N. Y. 522; Cumru Tp. Road Case, 2 Lanc. Law Rev. 75.

*Mr. D. McMullen* and *Mr. H. M. North* (with them *Mr. S. H. Reynolds*), for the appellee:

1. The defendant answered that it had laid its turnpike road on a direct line, adopting the only feasible and practicable route between the termini named in its charter. The plaintiffs offered no evidence to contradict this. On the testimony presented to him the master sustained the necessity, the propriety and the lawfulness of the location, and it appears unnecessary for us to undertake to vindicate his report.

2. He certainly laid down the true rule. The charter fixed the terminal points, but left the route to the discretion of the directors. The charter impliedly authorizes the taking of a public road, if it be the only practicable route on which the

turnpike can be built, and there is no power to control the discretion of the directors, except. for outrageous abuse. Here, there is no such allegation, no denial of an implied necessity to take this route, and no averment of any other route which could have been taken.

3. In Cleveland etc. R. Co. v. Speer, 56 Pa. 325, although the company could have gone through parallel alleys or the middle of lots and kept off the public street, this court held that the exercise of discretion by the directors, in locating the railroad through the main street of a town, was not outrageous, vexatious or oppressive, and therefore not reviewable. In our case there was only one feasible and practicable route, and we adopted it. If the discretion of our directors could be controlled in such a way as to compel them to make an impossible and useless road, the grant to us was a sham. We have not injured, but benefited the public.

OPINION, MR. JUSTICE MITCHELL:

The question presented in this case, whether a turnpike company, by virtue of a charter under the general corporation act of 1874, specifying the termini of its road, can appropriate an existing highway, is one of very considerable importance.

Eminent domain is defined to be the sovereign power vested in the state, to take private property for the public use. The contention of the appellee is, that under the law of Pennsylvania, any five persons, only three of whom need be citizens, may constitute themselves a corporation, take possession of any public highway of the commonwealth, change it to a turnpike road, and thereafter charge tolls for their private profit. A claim which thus in effect completely reverses the definition and fundamental objects of the power under which it is sought to be exercised, may well challenge careful scrutiny into the basis on which it rests.

It has been settled, since the cases of Kensington Plan, 2 R. 445, and Philadelphia & Trenton R. Co., 6 Wh. 25, that property devoted to public uses, including franchises, is subject to eminent domain, and may be taken for other public uses; but it is equally settled that it cannot be so taken without legislative authority expressed in clear terms, or by necessary implication. Whether this rule has been correctly applied to the

facts in all the cases, is a question on which judgments may fairly differ, and have differed sometimes in this court, but in the long line of decisions from Stormfeltz v. Manor Turnpike Co., 13 Pa. 555, down to Pittsburgh Junction R. Co.'s App., 122 Pa. 511, the rule itself has never been questioned.

The appellee derives its power from a charter under the general corporation act of 1874. It is not claimed that its charter gives it any express authority to take the public road in question. Whether that act would authorize the issue of any charter granting an express power to take other public property or franchises, except incidentally, and to such extent only as would not destroy or substantially impair the existing public use, is, at least, extremely doubtful. The weight of judicial decision seems to be against such authority: Barber v. Andover, 8 N. H. 398; Springfield v. Conn. River R. Co., 4 Cush. 71; Com. v. Railroad Co., 14 Gray 93; Housatonic R. Co. v. L. & H. R. Co., 118 Mass. 391; B. & M. R. Co. v. L. R. Co., 124 Mass. 368; Re Petition of B. & A. R. Co., 53 N. Y. 574; Application of City of Buffalo, 68 N. Y. 167.

It is not necessary, however, to determine this point, as the present charter does not assume to grant such authority. It gives the termini only, and makes no mention of the intermediate route. "It does not," says the learned master, "grant the right by express words to take and occupy the old road for the purpose of constructing the new one. Neither does it exclude or prohibit this defendant company from so doing." But this argument overlooks the settled rule that a failure to grant is itself an exclusion. Omission is prohibition. And in this particular case, though further confirmation is unnecessary, the general rule is further confirmed by the fact that the omission was intentional, it appearing that the Executive refused to grant a charter with such express power.

We are left, therefore, to the consideration of the only other ground on which the claim can rest, that of necessary implication. The imperative and inevitable nature of the implication requisite has been laid down in all our cases, and nowhere more strongly than in some of the most recent and carefully considered: See Pittsburgh Junction R. Co.'s App.. 122 Pa. 511; Penna. R. Co.'s App., 93 Pa. 150; Penna. R. Co.'s App., 115 Pa. 517; Stormfeltz v. Manor Turnpike Co., 13 Pa. 555;

Cake v. P. & E. R. Co., 87 Pa. 307; Tyrone School District's
App., 22 W. N. 513.

The appellee's charter gives only the termini of the pro-
posed road, and is silent as to the intermediate route. The
charter does not indicate the position of the termini relative to
the old road, nor is the master's report explicit as to this point,
but it appears in the evidence that the starting place is on the
old road, "at the terminus of the Bridgeport & Horseshoe
Turnpike in East Lampeter township," and the ending point
is also on or near it, "and end at the township line between
East Lampeter and Leacock townships, near the village of
Bird-in-Hand." Assuming even that both termini are on the
old road, the right to follow the course of that road between
the two, would not be necessarily implied. As already said,
the right of the new corporation to acquire an express author-
ity under the act of 1874 is doubtful, and the right to create a
necessity by its own act in fixing its termini, is equally so.
But passing that, as the case does not call for its decision, it is
entirely clear that the course of the old road is not the only
and not even the most direct route between the given points.
The master reports only that the line adopted for the pike,
which is the bed of the old Philadelphia road, "*is very nearly
direct* between the termini;" and it appears in the evidence
that a straight road between the termini would not have occu-
pied the old highway, though it would not have deviated far
from it at any point. The intervening country offered no
physical obstacles to a new route, either perfectly straight or
deflected to either side, for it was the fertile plain of the Lan-
caster valley. Notwithstanding the finding of the master,
therefore, that "draft No. 2, and the evidence, show it to be
the only feasible, reasonable, and practicable route between the
termini," it is entirely clear from the evidence that this con-
clusion does not rest on any physical difficulties in the way of
another route, but on what is the perfectly manifest animus of
the appellee's whole case, the saving of the expense of buying
a new route through private property. This indeed is not dis-
guised. There is scarcely a suggestion of any other ground
on which the right claimed can be supported. How entirely
insufficient this ground is, has been declared in Pittsburgh
Junction R. Co.'s App., 122 Pa. 531, in terms so forcible and

so pertinent to the present case that I could not hope to improve upon them: "The location claimed for defendant," says the present Chief Justice, "is a matter of economy, not of necessity. It can construct its road and reach its terminus by another route. It is true it would be expensive, but it is a mere question of money and engineering skill. It is not entitled to run through plaintiff's yard and cripple its facilities for handling its business, merely to save money. Upon this point, the language of our brother GORDON in Penna. R. Co.'s Appeal is so clear and forcible that I may well repeat it here : 'It is true that a franchise is property, and as such may be taken by a corporation having the right of eminent domain, but in favor of such right there can be no implication, unless it arises from a necessity so absolute that without it the grant itself would be defeated. It must also be a necessity that arises from the very nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience, or for the sake of economy.'"

This is decisive of the present case. There is no real ground set up, except of economy. The master indeed finds that the old road, during part of the year, is in bad condition for travel; that the turnpike is really a continuation of the same use in a better form, and that the change will not work irreparable injury which should be enjoined. But these considerations are mere make-weights and of no validity. If the road is in bad condition there is an adequate remedy to compel its repair, but as it has been in use for a century and a half, there is a strong presumption that it is not altogether unsuited to the public requirements. But, however bad it might be, its condition would be no justification for taking it away from its owners, and the proposal to substitute a better article at a moderate price would not help the right claimed. It is the necessity for the new use, not the inadequacy of the old, that is the test of such a change. The rule as to enjoining irreparable injuries only, has no application to acts, especially corporate acts, entirely without authority, for which there is no adequate measure of damages at law. Such acts equity always enjoins.

On the whole case it is entirely clear that the appellee's claim rests upon no real necessity, but only upon a convenience of

its own making and which has regard only to expense. The right, therefore, arises neither from express grant, nor from any necessary implication from the charter privileges, and hence does not exist at all. The injunction prayed for in the bill should be granted and made perpetual.

> Decree reversed, and record remitted for decree in accordance with this opinion.

MR. CHIEF JUSTICE PAXSON and MR. JUSTICE GREEN, dissented.