# Lovell *v.* Women's Pennsylvania Society for the Prevention of Cruelty to Animals, Appellant.

*Corporations—By-laws—Officers—Legislative charter.*

A corporation organized under a legislative charter and having as its object a purpose in which the public alone was interested was given by its charter power to make by-laws "for electing its officers and members, and for the general regulation and management of its affairs." The charter also provided that the incorporators should meet and "elect a president, ten vice presidents, a recording secretary, a corresponding secretary, and twenty-four persons who shall form a board of managers; all of these officers shall constitute an executive committee, and in them shall be vested the control and management of the affairs of the said corporation, and the executive committee may appoint such other officers as may be necessary for the transaction of the business of the society." The corporation adopted a by-law which provided that "the business of the society shall be administered by a president, ten vice presidents to represent the city of Philadelphia, and

one, or as many more as may be considered desirable, for each county in the state." The by-law further provided for the election of the other officers prescribed by the charter, and concluded with the words "who together shall constitute an executive committee." After the adoption of the by-laws the corporation increased the number of its vice presidents from ten to twenty-two, twelve of these representing different counties in the state. *Held,* (1) that all of the vice presidents thus increased in number were members of the executive committee and entitled to vote at its meetings; (2) that the provision in the charter giving the executive committee power to appoint other officers than those enumerated in the charter was sufficient to sustain the by-law and to authorize an increase in the number of vice presidents; (3) that there was no intent shown by the legislature to make a distinction among the vice presidents, and that therefore they were all entitled to act as members of the executive committee.

Argued Jan. 12, 1912. Appeal, No. 307, Jan. T., 1911, by defendant, from order of C. P. No. 3, Phila. Co., March T., 1911, No. 4610, awarding writ of mandamus in case of Mrs. George S. Lovell et al. v. Women's Pennsylvania Society for the Prevention of Cruelty to Animals, a Pennsylvania Corporation, and Caroline Earle White, President, and Elisabeth A. Somers, Recording Secretary, of said Corporation. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Reversed.

Petition for mandamus.

On plaintiff's petition an alternative writ of mandamus was issued requiring the defendants to show cause why they should not reconvene the executive committee of the defendant corporation and why the president should not declare a certain resolution to have failed of passage.

The petition for the writ alleged that the resolution had been carried by the votes of three vice-presidents who were not legally members of the executive committee because the act of incorporation prescribed ten vice presidents, whereas the executive committee was

composed inter alia of ten vice-presidents for Philadelphia and a number of vice-presidents from other counties among whom were the three above-mentioned. The answer denied that the act of incorporation limited the number of vice-presidents to ten; averred that the corporation had by its by-laws provided for more than ten; that for thirty years and upwards executive committees had been elected composed, inter alia, of more than ten vice-presidents and that the objection to the votes of the three vice-presidents had not been made until after the result of the vote had been announced.

Plaintiffs demurred.

The court below sustained the demurrer and awarded a peremptory mandamus. Defendants appealed.

*Error assigned* was in awarding writ of mandamus.

*John G. Johnson,* with him *Joseph H. Taulane,* for appellants.—It is submitted that the code of by-laws, which for forty years has been the rule of government of the corporation was not in contravention of its charter, but was made by virtue of a power given by that charter, and that therefore the executive committee which was elected in accordance with that code, was legally elected and its members duly qualified.

*Edwin O. Lewis,* for appellees.—A by-law which conflicts with the charter is invalid: Thayer v. Thompson, 220 Pa. 241; Curry v. Cemetery Association, 5 Pa. Super. Ct. 289; Diligent Fire Co. v. Com., 75 Pa. 291.

Opinion by Mr. Justice Stewart, April 8, 1912:

Corporation by-laws are simply prescribed rules for the government of the body, and the right to make them is incident to every corporation. The charter may be absolutely silent with respect to by-laws, nevertheless the right in the corporation to ordain them for the regulation of its own affairs, provided always that they of-

fend against no law, is quite as unquestionable as though the subject of an expressed grant. The right of course may be abridged and qualified in its exercise by the charter; and this occurs where the charter expressly withholds the right to regulate by means of by-laws certain matters in connection with the business of the corporation which otherwise the corporation would have a right to regulate for itself; or, it can occur when the charter expressly indicates and enumerates the matters and things which may be regulated through by-laws. In the latter case, by judicial construction, resting on the principle of expressio unius exclusio est alterius, what is not expressly given is excluded from the grant. In the case we have to consider the grant is in these words: "Section 5. The said Society, for fixing the terms of admission of its members, for the government of the same, for electing its officers and members, and for the general regulation and management of its affairs, shall have power to form a code of by-laws, not inconsistent with the laws of this State, or of the United States; which code, when formed and adopted, at a regular meeting, shall, until modified or rescinded, be equally as binding as this act upon the society, its officers and members." Clearly this grant withholds nothing either by express terms or by implication. A more extensive or comprehensive grant of power with respect to the making of by-laws could not well be constructed. The particular by-law adopted by the society, which is here challenged on the ground that it is ultra vires, reads as follows: "The business of the Society shall be administered by a President, ten Vice-Presidents, to represent the City of Philadelphia, and one, or as many more as may be considered desirable, for each county in the State; a Treasurer, a Recording Secretary, a Corresponding Secretary and twenty-four Managers, who together shall constitute an Executive Committee. Said Committee shall have power to fill vacancies in its own body." If there be any inconsistency between this by-

law and the charter, it is manifest that the point of conflict must be looked for elsewhere than in the fifth section above quoted, for its inclusion within the term of the power given in that section is too obvious for dispute. It is quite certain that we will find nowhere any express abridgement of the power there given. And so our attention is directed to the third section of the charter, which reads as follows: "Section 3. It shall be the duty of the corporators whose names are mentioned in the first section of this act, or any five of them after notice published in a newspaper printed in the city of Philadelphia, to meet together, and to elect a president, ten vice-presidents, a recording secretary, a corresponding secretary, a treasurer, and twenty-four persons, who shall form a Board of Managers; all these officers shall constitute an Executive Committee, and in them shall be vested the control and management of the affairs of the said corporation; and the Executive Committee may appoint such other officers as may be necessary for the transaction of the business of the society." The section next following provides for the election of officers for said society, and the qualifications of those who are to be allowed to vote. In order that the real question in the case may appear, a brief statement of the facts is here necessary. Acting under the authority given in the last clause of section 5, the corporation increased the number of its vice-presidents from ten to twenty-two, twelve of these representing different counties in the state. The title of these additional vice-presidents to their office, as vice-presidents, is not disputed; but they were allowed membership in the executive committee ex officio; and here is the point of controversy. Several of them at a meeting of the executive committee participated in a vote upon a certain resolution affecting a policy of the society, with the result that the affirmative side of the resolution prevailed because of their votes. These votes were challenged on the ground that the charter had limited the

606 LOVELL *v.* W. PA. S. for the P. of C. to A., Appellant.

Opinion of the Court.                    [235 Pa.

membership of the committee, and it was beyond the power of the society to increase it; that while the persons whose votes were challenged were vice-presidents, they were not members of the committee. The challenge not having been sustained, this mandamus proceeding was resorted to with a view of having new action upon the resolution, to be particpated in by no more than ten of the whole number of vice-presidents. Upon final hearing the court awarded a peremptory mandamus requiring the corporation to reconvene the executive committee, and compel the president to declare that the resolution had failed of passage. The appeal is from that decree. The question thus presented for our determination is a very narrow one, and turns upon the legislative purpose in connection with section 3 of the charter. The plaintiffs in the bill insist that "although the author of the incorporating statute may have been somewhat unfortunate in framing section 3," nevertheless, an intent to prescribe a complete and permanent system of government by an executive committee composed of those holding the particular offices of the society designated in the charter, and in addition a fixed and certain number of those not otherwise in office, each class to be limited in number as there indicated, may be fairly inferred; and it is urged in support of this contention, that to give any other meaning to the section "would be to extend and enlarge the powers of the society beyond those possessed by other corporations, both under special and general corporation laws of the commonwealth, in that it could vary at will the membership of its governing body or board of directors." Conceding that a construction such as is here contended for, would not offend against the strict letter of the charter, the argument advanced in its support is not convincing that it is the better or more natural one; certainly, it is by no means an obvious one. Inasmuch as we are here dealing with a special act of incorporation, it is of no consequence that under our general incor-

poration laws the directorate of every corporation is limited in its membership. It is not to be questioned that under its general power the legislature, when it passed the act under consideration, could have committed to the corporation the power of determining in its by-laws how many should compose its body of managers without any restriction whatever, and we have no reason to think that in doing so it would have entrusted any unusual or extraordinary power to the corporation. Any discussion of the question before us must start with the fact, that by section 5 of the charter the unqualified and unrestricted right is given the corporation to make by-laws for the general regulation and management of its affairs. That this, standing by itself, would allow the corporation to determine how many should constitute its board of managers, is manifest. It requires no strained construction of the earlier section, No. 3, to allow this grant of power to operate to the fullest extent, but simply that construction which to our mind is the more reasonable of the two suggested. The view taken by appellants would limit section 3 in its operation to the primary organization of the society, leaving such organization to be thereafter changed in its details by the society itself. We think this view quite as extreme as that asserted by the appellees. The charter clearly contemplates a permanent management of the society through an executive committee composed in a certain way. The manner of the composition of the committee is clearly indicated, the classes entitled to representation therein, official and unofficial, are clearly indicated as well; and while there is no express limitation upon its number as a whole body, yet the number of unofficial representatives is expressly indicated, and those entitled to membership virtute officii are ascertainable from preceding enumeration. Were there nothing else in section 3, we would feel compelled to accept the section as abridging the right of the society through its by-laws to increase the membership of the committee beyond the number indi-

608 LOVELL *v.* W. P.A. S. for the P. of C. to A., Appellant.

Opinion of the Court. [235 Pa.

cated. The act expressly refers to the persons composing the committee as officers of the society. The language is "all these (those previously enumerated) officers shall constitute an executive committee, and in them shall be vested the control and management of the said corporation, and the executive committee may appoint such other officers as may be necessary for the transaction of the business of the society." It is conceded that under this provision it is entirely competent for the society to elect other officers than those specifically referred to in the preceding clause, and that it may elect vice-presidents in excess of the number mentioned; but it is contended that no more than ten of those elected may be members of the executive committee. It is quite evident we think that in providing for ten vice-presidents of the society, it was no part of the purpose to thereby limit the number composing the executive committee, no more than it was in providing for one recording secretary and one corresponding secretary. These offices were created as essential to the successful conduct of the corporation, and the persons holding them were, virtute officii, to become members of the executive committee. It is not reasonable to suppose—the right to elect more than ten vice-presidents being conceded—that the legislture intended a distinction between the functions and powers of persons holding the same office. We think the better view is that what was contemplated was, that the entire official body, however extended, was to become an integral part of the directing and controlling body. This view is strengthened by the fact that those on the committee are designated officers, and power is expressly given to elect other officers than those specifically named. An increase in the number of vice-presidents being permissible under the charter, had the legislative purpose been to allow but ten to act on the executive committee, it is only reasonable to suppose that section 3 would have contained an express restriction, and that it would have made some provision indicating how the ten were

to be selected out of the greater number. We see no reason to suppose that the legislature intended a distinction between the vice-presidents of the society; that some should be members of the executive committee and some not; that no more than ten out of the whole number should ever have a voice in determining what should be the governing rules of a society which not only had for its field the entire state, but which could only efficiently act throughout the state by admitting into its councils residents of the several counties in the state capable of rendering work in their respective districts. Any such construction would be so manifestly prejudicial to the efficiency of the corporation, and confine its beneficent work within narrower limits than were ever intended, that except as it is too obvious to admit of any other, it should be rejected; particularly so, when it is sought to derive from such construction an implied restriction and qualification upon a right given elsewhere in the charter, which, if allowed to operate according to its letter, would make such construction impossible. It is to be remembered that we are here not dealing with a charter containing private grants to individuals of power and privileges to be exercised for their own advantage, and therefore to be construed strictly against the grantee, but with a charter which has as its object the attainment of ends in which the public at large alone are interested. Charters of the latter character are to be construed liberally and beneficially for the purpose for which they were granted. If by this charter it was intended that the vice-presidents were to be members of the executive committee virtute officii, as we think it certainly was, it follows that, if rightfully holding and exercising that office, the persons whose votes were challenged were duly qualified as members of the committee, and that their votes were properly received and counted. This construction removes all apparent inconsistency between the several parts of the charter, allows each to operate according to its own terms, and gives, as we be-

610 LOVELL *v.* W. PA. S. for the P. of C. to A., Appellant.

lieve, a fair construction of the legislative intent. This being our conclusion of the charter privileges of the corporation, it is unnecessary to consider the other point urged upon our consideration in the appeal.

The assignments of error are sustained, and the decree awarding writ of peremptory mandamus is reversed at cost of appellees.