# Connellsville and State Line Railway Company, Appellant, *v.* Markleton Hotel Company.

*Eminent domain — Railroads — Power to condemn waters of stream—Acts of February 19, 1849, P. L. 79, and April 9, 1856, P. L. 288—Charters—Construction.*

1. A railroad chartered under the general railroad laws of the State, in the exercise of its right of eminent domain, does not have authority to condemn for its corporate purposes the waters of a stream over which it has located and constructed its roadbed on a right of way acquired by condemnation proceedings. Such right is not conferred either by the Act of February 19, 1849, P. L. 79, or the Act of April 9, 1856, P. L. 288.

2. A railroad company incorporated under the general railroad laws of the State does not have power to appropriate anything whatever for use in the operation of its road.

3. If a particular power is omitted from the charter of a corporation it is to be taken as a prohibition against its exercise unless there is an imperative implicaton of its inclusion.

Argued Sept. 30, 1914. Appeal, No. 216, Oct. T., 1914, by petitioner, from order of C. P. Somerset Co., Sept. T., 1914, No. 324, refusing to approve bond filed in con-

demnation proceedings in case of Connellsville and State Line Railway Company v. Markleton Hotel Company. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Petition for approval of bond filed by a railroad company in condemnation proceedings.  Before RUPPEL, P.J.

The opinion of the Supreme Court states the facts.

The court refused to approve the bond.  Petitioner appealed.

*Error assigned* was in refusing to approve the bond.

*Chas. F. Uhl, Jr.,* with him *Chas. H. Ealy,* for appellant, cited:  New York & Harlem Railroad Company v. Kip, 46 N. Y. 546; Baring v. Erdman, 2 Fed. Cases 784; Bigelow v. Draper, 6 N. D. 152 (69 N. W. Repr. 570); Postmaster General v. Early, 25 U. S. 133, 12 Wheat, 133; New Brighton & New Castle R. R. Company's Application, 30 P. L. J. (O. S.) 22; Pennsylvania R. R. Company v. Miller, 112 Pa. 34; Rudolph v. Pennsylvania R. R. Co., 186 Pa. 541; Scranton Gas and Water Co. v. D., L. & W. R. R. Co., 240 Pa. 604.

*Francis J. Kooser,* with him *Ernest O. Kooser, James E. Barnett, Richard B. Scandrett* and *T. C. Noble,* for appellee, cited:  Dryden v. Pittsburgh, V. & C. R. R. Co., 208 Pa. 316; Lance's App., 55 Pa. 16; Dimmick v. Brodhead, 75 Pa. 464; Cambria & Clearfield Ry. v. Blandburg Water Co., 226 Pa. 402; Davey v. Ruffell, 162 Pa. 443 (449); Pennsylvania R. R. Co. v. Miller, ·112 Pa. 34.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

The Markleton Hotel Company, the defendant, is the owner of a tract of land containing 158 acres in Somerset County, Pennsylvania, fifty-four acres of which lie

adjacent to and on the east side of the Casselman river. The hotel buildings are on the part of the tract lying on the west side of the river. A small stream, known as Iser's run, flows through the fifty-four acre tract and empties into the Casselman river. Some of the water of this stream is conveyed across the river to the hotel by a pipe which enters the stream some distance from its confluence with the river, and is used for domestic purposes by the hotel company. The Connellsville and State Line Railway Company, the plaintiff, was incorporated under the general railroad Acts of Feb. 19, 1849, P. L. 79, and April 9, 1856, P. L. 288, to construct a railroad through the counties of Fayette and Somerset in Pennsylvania. It located and has constructed its road along the east side of the Casselman river through the defendant company's land, the bed of the railroad passing over Iser's run, a short distance from the point where it enters the Casselman river. The right of way was condemned and the damages to the Markleton Hotel Company were ascertained in condemnation proceedings. The railway company then undertook to use some of the waters of the run, claiming to have acquired the right to do so as riparian owner, by virtue of the condemnation proceedings. The hotel company filed a bill in equity to restrain the railway company from using the waters of the run, and the action of the court below in sustaining the bill was affirmed by this court: Markleton Hotel Company v. Connellsville and State Line Railway Company, 242 Pa. 569. Thereupon the railway company claiming the right under the Acts of 1849 and 1856, to appropriate "the water of Iser's run as it flows over defendant's property from a point within the limits of its said right of way to the confluence of the run and the Casselman river," tendered a bond to the defendant company to secure the damages which it might sustain by reason of such appropriation, and it being refused by the defendant, the bond was presented for approval to the court below. The defendant objected

to the approval of the bond on the ground that the railway company was without right, under the laws of Pennsylvania, to appropriate the waters of the stream. The court below sustained the exception and refused to approve the bond. The railway company has taken this appeal.

The question in the case is whether a railroad company chartered under the general railroad laws of the State, in the exercise of its right of eminent domain has authority to condemn for its corporate purposes the waters of a stream over which it has located and constructed its roadbed on a right of way acquired by condemnation proceedings.

There are certain fundamental principles which should not be overlooked in construing the charter of a corporation. If a particular power is omitted from those enumerated in the charter it is to be taken as a prohibition against its exercise unless there is an imperative implication of its inclusion: Groff's App., 128 Pa. 621. What is not given by express words or by necessary implication is withheld. In Commonwealth v. Erie and Northeast Railroad Company, 27 Pa. 339, 351, we said more than half a century ago: "That which a company is authorized to do by its act of incorporation, it may do; beyond that all its acts are illegal. And the power must be given in plain words or by necessary implication......If you assert that a corporation has certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim, for nothing else can possibly avail you. A doubtful charter does not exist; because whatever is doubtful, is decisively certain against the corporation." This has been repeated time and again and it may be regarded as the settled doctrine of this court in the interpretation of charters granted to corporations.

If we understand the position of the railway company, it is that the right to appropriate the water is granted by necessary implication in the Act of February 19,

1849, P. L. 79; but if that act did not grant the power, it was conferred by the Act of April 9, 1856, P. L. 288. We think the position is untenable, and that there is nothing contained in either act which authorizes the railway company to condemn the waters of a stream for the use of its engine or for any other corporate use.

The Act of 1849 empowers a railway company, chartered under its provisions, to locate such route for its road as may be deemed expedient, not to exceed sixty feet in width except at deep cuttings or high embankments, and thereon to construct a railroad with the necessary sidings. It authorizes the company to enter upon the land on which the road may be located and to construct the road thereon, and for that purpose to take stone or other suitable material necessary for the construction of bridges, viaducts or other buildings which may be required for the use, maintenance or repair of the railroad. This is substantially the authority which the Act of 1849 confers upon a railroad company in the location and construction of its road. It empowers the company to enter upon land and appropriate it for the construction and maintenance of the physical road and necessary sidings and appurtenant buildings. It also confers power upon the company to take materials from adjacent lands for the construction of bridges and viaducts. It is apparent, therefore, that in the enactment of the Statute of 1849 the only purpose of the legislature was to confer upon railroads the authority to appropriate land and material for the location and construction of the roadway. There is nothing in the act which, properly construed, indicates an intention on the part of the legislature to confer authority on the railroad company to appropriate water for use in the operation of the road. The act contains no provision which leads to the conclusion that such was the legislative intent. Neither by express words nor by necessary implication is authority given to a railroad company to appropriate anything whatever for use in the operation of the road.

If the plaintiff's contention be correct that the act confers authority to appropriate water for corporate purposes, the same rule must be applied as to everything else which may be used in operating the road. The authority could be invoked to appropriate for a like purpose coal, oil and gas which could be utilized in the operation of the road. Some of these are as necessary as water in producing steam, and if water may be condemned for corporate purposes there is no sound reason for denying the right under the Act of 1849 to appropriate coal, oil or gas. In no reported case does it appear that it was ever contended that the act should be so interpreted, although the statute has been in force far beyond half a century.

That the Act of 1849 did not confer authority to condemn water for railroad purposes seems to have been the view entertained by the legislature as to another and similar act. The authority to condemn is alleged to be contained in the 10th section of the act which is identical with section 11 of the Act of April 13, 1846, P. L. 312, incorporating the Pennsylvania Railroad Company except the latter act also provides that appropriations may be made for maintenance or repair of the road. It is clear that if the Act of 1849 conferred authority on railroad companies to appropriate waters of a stream for use in operating a railroad, that a like authority was invested in the Pennsylvania Railroad Company by the Act of 1846. It has never been contended, however, so far as we are advised that the Pennsylvania Railroad Company ever claimed that its charter conferred upon it the right to condemn waters for use in the operation of its trains. It is not too much to say, that if such right existed, or had ever been suspected to exist, the company would have invoked the authority in securing water for its corporate uses. It neither claimed nor attempted to exercise the authority, and in effect conceded that the power did not exist under the Act of 1846 but had the Act of 1849 passed giving the company the right to appropriate and condemn water for such use.

The Act of 1856 does not aid the plaintiff's contention that it possesses the power to condemn water for the operation of its road. The act purports to be a supplement to the Act of 1849. The first section construes the Act of April 27, 1855, P. L. 365, entitled "An act extending the rights of trial by jury to certain cases." The second and third sections provide the proceedings which shall be taken where the parties cannot agree upon the damages sustained by the exercise of the right of eminent domain, and for the ascertainment of the damages by judicial proceedings. The Act of 1849 provides that before the company shall take possession of the lands or materials it shall make ample compensation or tender adequate security therefor to the owner. It also provides for the appointment of viewers to ascertain the damages, and requires them to make a report to the court of the damages awarded, and if the report is confirmed judgment is to be entered thereon. This judgment is final, and execution is authorized to be issued thereon unless it is paid within thirty days. These provisions were regarded as inadequate to protect the owner of the land in that the security required to be given was insufficient: Dimmick v. Brodhead, 75 Pa. 464, and that no right to appeal was given to the parties from the award of the viewers and from the judgment entered thereon in the Common Pleas. These supposed defects were remedied by the Act of 1856. The second section requires the railroad company on refusal of the tender of the bond, to present it to the Common Pleas for approval. The third section of the act permits the parties to appeal from the award within thirty days after it has been filed, and also authorizes a writ of error to the judgment which may be had in the Common Pleas on the issue framed and tried before the court and jury.

It will be observed, therefore, that there are no powers or rights to appropriate water conferred upon the corporation by this act. It is contended, however, that the

right to take water is given by the second section which provides for giving security for the damages when no agreement can be made "either for lands, water, water rights, or materials." The words "water, water rights" are not contained in the Act of 1849. There is, however, no rule of construction that will permit this act to confer the right to take water or water rights by the use of these words in this connection in the Act of 1856. The legislature incorrectly assumed that these words were in the Act of 1849 and hence inserted them in the later statute which was enacted to provide a remedy for the exercise of the right of eminent domain conferred by the Act of 1849. There is nothing in the Act of 1856 which by implication even confers authority on the corporation to condemn or appropriate any property whatever. It simply provides a remedy, different from that of the Act of 1849, when the corporation exercises the rights conferred by the latter act. The right to condemn water did not exist prior to the Act of 1856; and hence the grant of a remedy for the exercise of the power to take waters by that act did not constitute a grant of such power: Howe v. Norman, 13 R. I. 488.

We are all of the opinion that the order of the court below, declining to approve the bond presented by the railroad company, should be affirmed, and it is so ordered.