## State Authority Contracts

MARGIOTTI, Attorney General, April 21, 1938.—We have your request for an opinion, whether the board of The General State Authority may delegate to its executive committee, or a quorum thereof, the power and duty to

award contracts to the lowest responsible bidder for projects of the authority. You state that under the by-laws of the authority the executive committee consists of five members, appointed by its president, and that some time ago the board of the authority adopted a resolution conferring upon its executive committee the power to award contracts for the projects of the authority, and directing that such duty shall be performed by said committee, or a quorum thereof.

The General State Authority was created by the General State Authority Act of June 28, 1935, P. L. 452, as amended by the Act of May 18, 1937, P. L. 676. The act declares it to be "a body corporate and politic, constituting a public corporation and governmental instrumentality". Its membership is composed of the Governor, the State Treasurer, the Auditor General, the Secretary of Internal Affairs, the Secretary of Property and Supplies, the Speaker of the House of Representatives, and the President pro tempore of the Senate, and their respective successors in office, and three citizens of Pennsylvania to be appointed as therein provided.

The purposes and powers of the authority are prescribed by section 4 of the Act of 1937, supra, which, in part, is as follows:

"The Authority is created for the purpose of constructing, improving, maintaining, and operating sewers, sewer systems, and sewage treatment works for State institutions of every of every kind and character (heretofore or hereafter constructed), public buildings for the use of the Commonwealth, State arsenals, armories, and military reserves, State airports and landing fields, State institutions of every kind and character (heretofore or hereafter constructed), additions and improvements to land grant colleges, State highways, and bridges, tunnels, and traffic circles on State highways, swimming pools, and lakes on State land, and dams and improvements to river embankments (any and all the foregoing being herein

called 'projects') ; and the Authority is hereby granted and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including, but without limiting the generality of the foregoing, the following rights and powers:

"(*a*)  To have perpetual existence as a corporation. . . .

"(*e*)  To acquire by purchase, lease, or otherwise, and to construct, improve, maintain, repair, and operate projects.

"(*f*)  To make by-laws for the management and regulation of its affairs.

"(*g*)  To appoint officers, agents, employes, and servants; to prescribe their duties and to fix their compensation. . . .

"(*j*)  To make contracts of every name and nature, and to execute all instruments necessary or convenient for the carrying on of its business. . . .

"(*l*)  To have the power of eminent domain. . . .

"(*n*)  To do all acts and things necessary or convenient to carry out the powers granted to it by this act or any other acts."

In addition to the foregoing, the act confers upon the authority many other powers. Subdivision (*d*) of section 4 gives the authority power to acquire, purchase, hold and lease as lessee, real or personal property, tangible or intangible, or any interest therein, and to lease the same as lessor to the Commonwealth, or any of its departments or agencies, or to any land-grant college, or to any city, county or other political subdivision of the Commonwealth. Subdivision (*h*) of said section gives the authority power to fix, alter, charge, and collect rates, rentals, and other charges for the use of its facilities, its services, or its projects, "to be determined by it", so that it may pay its expenses, pay for the construction, improvement, repair, maintenance, and operation of its facilities and properties, as well as pay its obligations. Subdivision (*i*) authorizes it to borrow money, make and

issue bonds, and to secure the payment of such bonds by a pledge or deed of trust of all or any of its revenues, rentals, and receipts, "as the Authority shall deem advisable".

If the board of the authority by resolution may delegate to its executive committee the power and duty of awarding contracts for its projects to the lowest responsible bidder, it may delegate in a similar manner to such committee any or all of the other powers conferred upon it by the statute; and it may, in like manner, delegate these powers to one of its members, since the manner of such delegation is immaterial. The question here involved is whether the authority has the power of delegation with reference to the awarding of contracts, and not to whom such power may be delegated, or the manner in which it is done.

Section 7 of the General State Authority Act creating the authority provides how its powers shall be exercised, as follows:

"The powers of the Authority shall be exercised by a governing body consisting of the members of the Authority acting as a board. . . .

"Six members shall constitute a quorum of the board for the purpose of organizing the Authority and conducting the business thereof and for all other purposes, and all action shall only be taken by vote of a majority of the members of the Authority, unless in any case the by-laws shall require a larger number."

The powers of a corporation, like its corporate existence, are derived from a grant by the State or other sovereignty creating it. It has no powers except such as are expressly or impliedly conferred by its charter or the statute creating it: Citizens Electric Illuminating Co. v. Lackawanna & Wyoming Valley R. R. Co., 255 Pa. 176. If the charter requires the powers conferred to be exercised in a particular manner, or by particular officers or agents, the corporation cannot legally exercise them

otherwise than in the mode pointed out. Corporations, both for their powers and the mode of exercising them, depend upon the statute creating them: Fowler et al. v. Scully, for use, 72 Pa. 456; The Bank of Kentucky v. The Schuylkill Bank, 1 Pars. 180.

A corporation has no natural rights, such as an individual or partnership, and if a power is claimed for it the words giving the power, or from which it is necessarily implied, must be found in the charter or, in the present case, in the statute creating it and which is the charter of the authority, or the power does not exist: Commonwealth v. The Erie & North-East R. R. Co., 27 Pa. 339; Citizens Electric Illuminating Co. v. Lackawanna & Wyoming Valley R. R. Co., supra; American Transfer Company's Petition, 237 Pa. 241. If a particular power is omitted from those enumerated in the charter it is to be taken as a prohibition against its exercise, unless there is an imperative implication of its inclusion: Groff's Appeal et al., 128 Pa. 621; Connellsville & State Line R. R. Co. v. Markleton Hotel Co., 247 Pa. 565.

It is to be noted the legislature expressly provided that the powers of the authority shall be exercised by "the members of the Authority acting as a board"; that "six members shall constitute a quorum of the board for . . . conducting the business" of the authority, and that "all action shall only be taken by vote of a majority of the members of the Authority". Nowhere in the statute does is appear directly or by necessary implication that the board of the authority may delegate any of the powers or duties imposed upon it, and to hold that it may do so would be in the teeth of the express provisions of section 7 of the act, above quoted.

It is not without significance that, while the board of directors of a business corporation, by the express provisions of subdivision (6) of section 402 of the Business Corporation Law of May 5, 1933, P. L. 364, may delegate to an executive committee the authority of the board in

the management of the business of the corporation, this power has not been given to the board of the authority. Keeping in mind that the authority is declared to be "a public corporation and governmental instrumentality", as well as the public character and public importance of its primary corporate functions, it is reasonable to assume the legislature intended that these powers, including the awarding of contracts for its projects, which is one of its primary corporate functions, should be exercised only by the affirmative vote of a quorum of the board, or six members, and not by a vote of a quorum of any committee, however constituted, which would mean by the vote of only three members of the authority. In such case the action would not be "by a vote of a majority of the members of the Authority", as the statute requires.

It has been held that a corporation whose charter vests the management of its affairs in a board of directors cannot, by a bylaw, substitute an executive committee for such board. In Tempel v. Dodge et al., 89 Tex. 69, 32 S. W. 514, the Supreme Court of Texas said (p. 70) :

"Upon this statement the question arises: can the board of directors of a corporation, under a charter which imposes upon it the entire management of its affairs, confer that authority upon an executive committee to be appointed by the President of the company? Undoubtedly the board of directors can appoint agents, whether in the form of committees or as single agents, to transact the ordinary business of the corporation; but we believe that the rule is well settled by authority and sustained by sound principle that a board of directors can not confer upon others the power to discharge duties imposed upon them which involve the exercise of judgment and discretion, except in the transaction of the ordinary business of the corporation, unless authorized so to do by the charter: (Thompson on Corporations, sec. 3944, et seq.; Green's Brice's Ultra Vires, 490-1-2; Railway v. Ritchie,

40 Me., 425; Tippets v. Walker, 4 Mass., 595; Weidenfeld v. Railway, 48 Fed. Rep., 615.)

"The by-laws in express terms substituted the executive committee, to be appointed by the president, for the board of directors, and attempted to confer upon that committee all of the powers given by the charter to the board of directors. Such a provision in the by-laws is so palpably in conflict with the charter under which the corporation was organized that there could scarcely be a question that the by-law would be absolutely null."

Although by subdivision (f) of the statute creating it, the authority is expressly given the power "to make by-laws for the management and regulation of its affairs", this conferred upon it no power it did not already possess. The power to make bylaws is a necessary incident of any corporation: Lovell v. Women's Pennsylvania Society for the Prevention of Cruelty to Animals, 235 Pa. 601; Alters v. Journeymen Bricklayers Protective Assn., 19 Pa. Superior Ct. 272. It necessarily follows that the powers of a corporation cannot be enlarged or extended by bylaws beyond the scope authorized by its charter. Nor, on the other hand, can a bylaw detract from the powers of a corporation. It can merely affect the mangement of its business and control its officers and agents: 14(A) C. J. 251, sec. 2077, and cases cited: Hayes v. German Beneficial Union, 35 Pa. Superior Ct. 142.

While the power to make bylaws is inherent in every corporation, its exercise is not without restriction or limitation. Bylaws of a corporation which are contrary to or inconsistent with its charter, or governing statute, are ultra vires and void, even though they may have been unanimously adopted by the members of the corporation. They must be consistent both with the terms and with the spirit and intent of the corporation's charter or its governing statute: Lutz v. Webster, 249 Pa. 226; Arbour v. Pittsburg Produce Trade Assn., 44 Pa. Superior Ct. 240; Commonwealth et al. v. Fisher ex rel., 7 Phila. 264.

So far as the bylaws of the authority seek to create an executive committee, its action may be sustained. But when the board of the authority attempts to delegate to such committee, or a quorum thereof, any of the powers and duties imposed upon it by the statute, it must point to the language which authorizes it, either expressly or by necessary implication. We find no such language in the act.

It is of no moment that in the present case such delegation is attempted by a resolution of the board of the authority, instead of by a bylaw; if the board possesses such power, it may be accomplished by either method. The only particular in which the board of the authority may vary the provisions of the statute is that it may, by a bylaw, require all action to be taken by vote of more than a majority of the members, instead of by a vote of a majority, as the statute provides. This express provision excludes any implied power to authorize action of the authority by less than a majority, and if by the words "all action" the legislature intended to include the awarding of contracts for projects, and we think it did, then clearly all such contracts must be awarded by a vote of six members of the authority, unless by a bylaw it shall require a larger number. The doctrine of implied power is not to be stretched to permit that to be done by a corporation which the legislature has previously said shall not be done: Pittsburg Rys. Co. v. Pittsburg, 226 Pa. 498.

We are of the opinion the board of the General State Authority may not delegate to its executive committee the power and duty of awarding contracts for its projects to the lowest responsible bidder, but that such contracts must be awarded by the affirmative vote of a majority of the members of the said authority, which would be six, in accord with section 7 of the act of assembly creating it, unless by a bylaw it shall require a larger number.