## Johnston v. Delaware, Lackawanna & Western Railroad Company, Appellant.

*Eminent domain—Railroad companies—Condemnation proceedings—Necessary steps—Termini of new route—Irregular proceedings—Equity—Injunction.*

1. A proceeding for the condemnation of private property for a railroad right of way is contrary to the course of the common law, and the steps directed by statute must be strictly followed. Private property is not to be taken by the exercise of the power of eminent domain, unless the legal prerequisites are clearly and definitely established.

2. The successive steps necessary to vest title to land in a railroad company in condemnation proceedings are (a) a preliminary survey of the lands for the purpose of exploration made by engineers and surveyors who after running and marking one or more experimental lines report their work with necessary maps and profiles to the company; (b) the selection and adoption of a line or one of the lines so run, as and for the location of the proposed railroad, by appropriate action of the board of directions; and (c) the making or securing to the owner of compensation by the corporation for the damages he has sustained by reason of the appro-

priation of his land. Until the route, including the termini, is definitely fixed by the board of directors, there can be no appropriation of the land.

3. A court of equity will restrain a railroad company from entering upon and taking land for use in straightening its road, where the railroad company has made no legal appropriation of the land.

4. A railroad company in 1910 by resolution of its board of directors, declared its intention to straighten and relocate its road between Clarks Summit and Hallstead "according to the location and route" shown upon a location plan. In 1911, the line was re-run, the old stakes were destroyed, and the final stakes were re-set in the same location. In 1912, the railroad company, by resolution of its board of directors, declared its intention to appropriate the lands for the right of way as shown on the map, referred to in the resolution of 1910, between Clarks Summit and New Milford. New Milford was between Clarks Summit and Hallstead. The defendant company petitioned for the appointment of viewers to assess damages to be caused by the taking of land between Clarks Summit and Hallstead. The plaintiff, an owner of land situated between New Milford and Hallstead, filed a bill in equity for an injunction restraining the defendant company from entering upon his land. The lower court awarded the injunction. *Held,* that by the resolution of 1912, the railroad company had receded from its previous intention to improve the road between Clarks Summit and Hallstead, and adopted New Milford as the new terminus of the improvement; that the map referred to in the second resolution, although showing Hallstead as the terminus, was ineffective to make it such, in view of the express language of the resolution fixing New Milford as the terminus; that plaintiff's land had not been legally appropriated, and the injunction was properly granted.

Argued March 16, 1914. Appeal, No. 63, Jan. T., 1914, by defendant, from decree of C. P. Susquehanna Co., Aug. T., 1913, No. 24, In Equity, awarding injunction, in case of Kenneth D. Johnston v. The Delaware, Lackawanna & Western Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before TERRY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

The court awarded the relief prayed for. Defendant appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law of the trial judge, and the decree.of the court.

*J. H. Oliver,* with him *W. D. B. Ainey* and *D. R. Reese,* for appellant.—The resolution of April 19, 1910, was an appropriation of the plaintiff's land: Scranton Gas & Water Co. v. D., L. & W. R. R. Co., 225 Pa. 152; Williamsport, &c., R. R. Co. v. Philadelphia, &c., R. R. Co., 141 Pa. 407; Fischer v. R. R. Co., 175 Pa. 554; Davis v. Ry. Co., 114 Pa. 308; Johnston v. Callery, 173 Pa. 129; Johnston v. Callery, 184 Pa. 146.

*H. C. Reynolds,* with him *John Ferguson,* for appellee. —The proceedings to condemn were irregular and void: Jones v. Tatham, 20 Pa. 398; Williamsport, Etc., R. R. Co. v. Railroad Co., 141 Pa. 407; Kaufman v. Railroad Co., 210 Pa. 440; Davis v. Railway Co., 114 Pa. 308; Wilson v. Railroad Co., 222 Pa. 541; Studebaker v. Gas Co., 7 Pa. Superior Ct. 641; Penna. R. R. Co. v. Duncan, 111 Pa. 352; Tyrone Gas & Water Co. v. Tyrone Boro., 195 Pa. 566.

OPINION BY MR. JUSTICE MESTREZAT, May 18, 1914:

This is a bill in equity filed by the plaintiff to restrain the defendant railroad company from entering upon and taking his land in Susquehanna County to straighten and improve its road. The bill, as amended, avers, inter alia, that the plaintiff is the owner in fee of two farms in Great Bend Township, Susquehanna County; that defendant has notified him of its determination to appropriate two parcels of said farms for its corporate uses and purposes; that defendant has not by any legal action acquired the right to take any part of his land; that

the two resolutions adopted by the directors of the defendant company, which it claims authorizes it to take the plaintiff's land, do not constitute such legal action as entitles the defendant to appropriate the land; and that the second of said resolutions purports only to widen and straighten the railroad between Clarks Summit and New Milford, whereas plaintiff's property is beyond New Milford. The bill prays, inter alia, that the defendant be enjoined from taking any portion of his land. The answer avers that the defendant has taken proper corporate action to appropriate plaintiff's land. The learned court below entered a decree enjoining the defendant company from taking the land of the plaintiff described in the petition, filed in the Common Pleas for the approval of the bond, in pursuance of the resolutions of the board of managers of the defendant company recited in and attached to the petition, for the purposes therein set forth. The decree, however, was without prejudice to the right of the defendant to proceed anew to condemn the land after it had taken the requisite definite action therefor. There was also a condition in the decree attached to the future taking of the plaintiff's land providing that a suitable passageway should be constructed between the two pieces of land divided by the defendant's road. The defendant company has taken this appeal.

The controlling question, and the only one which need be considered here, is whether the defendant company by proper corporate action appropriated the plaintiff's land for straightening and improving its railroad. The other questions raised on the record become immaterial to the disposition of the cause on this appeal, as it is clear that if the defendant has made no legal appropriation of the land, it cannot condemn under the exercise of its power of eminent domain.

The successive steps necessary to vest title to the roadway in a railroad company have been pointed out in many of our decisions. They are: (a) a preliminary

survey of the lands for the purpose of exploration made by engineers and surveyors who, after running and marking one or more experimental lines, report their work with necessary maps and profiles to the company; (b) the selection and adoption of a line or one of the lines so run, as and for the location of the proposed railroad by appropriate action by the board of directors; and (c) compensation made or secured by the corporation to the owner for the damages he has sustained by reason of the appropriation of his land.

These are the several steps, held necessary to vest in the corporation the title to the owner's property under eminent domain proceedings. Each and every step is a prerequisite to the right of the corporation to deprive the owner of his property. When the route has been surveyed, marked on the ground, and adopted by the appropriate action of the board of directors of the corporation the experimental stage has passed and there is a fixed and definite location of the road. The route, including the termini, must be definitely determined by the board of directors The land is then taken from the owner and appropriated to the use of the corporation. It has acquired a conditional title, good against rival corporations, but not as against the owner until compensation is made or secured to him. Until there is an experimental survey or surveys made on the ground and an adoption of the route, including the termini, by the board of directors, there can be no appropriation of the owner's land. As said in our cases, the act of location is at the same time the act of appropriation, and, it may be added, the latter cannot take place without or in the absence of the act of location. A legal appropriation fastens a servitude in favor of the corporation upon the property taken. The exercise of the right of eminent domain does not permit a corporation to locate and adopt two or more routes at the same time for its road through private property. It may make only one final location at the time and that must be definitely fixed by proper

corporate action. After the act of location by the company, the owner or the company may proceed at once to secure an ascertainment of damages, but until such act neither can do so; for no right to damages vests in or accrues to the owner until there has been an appropriation of his property by the corporation: Davis v. Railway Co., 114 Pa. 308; Williamsport, Etc., R. R. Co. v. Railroad Co., 141 Pa. 407.

The action of the defendant company in the present case under which it claims the right to appropriate the plaintiff's land for straightening and improving its line is, as recited in the petition to the Common Pleas for the appointment of viewers to assess damages, the resolutions of its board of managers adopted on April 28, 1910, and January 25, 1912, respectively. By the resolution of 1910 the company declared its intention to straighten and relocate its road "according to the location and route shown upon the location plan entitled, 'D., L. & W. R. R. Co., proposed change of alignment, Clarks Summit to Hallstead—Scale 1 inch 3000 feet, Oct. 25, 1909,' and in accordance with the description of said route and changes as hereinafter set forth, the said map and description being hereby adopted and ordered filed as a part of the resolution"; and appropriated the necessary land and interests therein along the route. The map shows a projected, straightened and improved line between Clarks Summit and Hallstead, in connection with the line in use by the defendant company. New Milford and Hallstead are both shown on the map.

The resolution of 1912 declares that for the purpose of better securing the safety of persons and property and to accommodate the increasing trade and traffic on the main line of the defendant's railroad it is necessary to straighten and otherwise improve "that part of the main line of the railroad of this company between Clarks Summit and New Milford, by the construction of an additional roadbed, partly adjacent to and partly divergent from the present roadbed,......according to the loca-

tion, route or line shown upon the blue print map hereto annexed and hereby made a part hereof for a particular description of said location, route or line, as the same has been surveyed, located or laid out upon the ground" which location is approved and adopted; and the lands and the interests therein along the said route are appropriated by the company. The map referred to in this resolution is a blue print of the one attached to the first resolution.

Hallstead is on the defendant's road and about forty miles north of Clarks Summit, and New Milford lies between the two places and about seven miles south of Hallstead. The land of the plaintiff is between New Milford and Hallstead. The preliminary surveys for the improvement were begun prior to 1910, and the maps showing the location of the improved line were made from the same data. The line was re-run in the winter of 1911, the old stakes were destroyed, and the final stakes were reset in practically the same location. The defendant's engineer testified that the location of the improved line was determined in the winter of 1911. He made an estimate of the cost of the improvement between Clarks Summit and Hallstead and also between Clarks Summit and New Milford, and furnished both estimates to the board of directors in December of that year. The improvement in the line is principally between Clarks Summit and New Milford.

It will be observed that the plaintiff's land lies north of and between New Milford and Hallstead and that, therefore, the appropriation made by the resolution of 1912 did not cover it. The learned court below held that "the defendant has not definitely located its improved line across, nor with certainty appropriated the plaintiff's land," and for that reason sustained the bill and granted the injunction. With this conclusion we agree. The route adopted by the resolution of April, 1910, extended from Clarks Summit to Hallstead and unquestionably included the plaintiff's land. If the necessary

preliminaries for a legal appropriation had been taken, the resolution of 1910 would have authorized the defendant company to appropriate the plaintiff's land for the improvement of its road. There is grave doubt, however, as to whether a definite and fixed line had been finally marked on the ground and adopted by the corporation prior to 1912. The testimony of the defendant's own engineer leaves this question in doubt. We need not, however, determine whether the corporation had taken appropriate action to condemn the route from Clarks Summit to Hallstead by the action of its directors in April, 1910, as we are clearly of the opinion that by the resolution of 1912 the corporation intended to confine and limit its appropriation for the improvement to that part of the road between Clarks Summit and New Milford. In the proceedings for condemnation instituted by the corporation in the Common Pleas, both resolutions are relied upon as authority for the appropriation of the plaintiff's land. As already pointed out, if the action taken by the company in April, 1910, was otherwise legal it would be sufficient authority for the adoption and appropriation of the route by the defendant. That resolution declared it to be the intention of the corporation to improve its road between Clarks Summit and Hallstead and would justify the condemnation of the plaintiff's land. Subsequently to the adoption of this resolution the corporation manifestly changed its intention regarding the part of its road to be straightened, otherwise it would not have adopted the resolution of January, 1912. There can be no other explanation of the passage of the later resolution which was wholly unnecessary as well as insufficient to authorize the condemnation of any land between New Milford and Hallstead. The two resolutions adopted precisely the same route between Clarks Summit and New Milford. The later added nothing to the validity of the adoption and appropriation by the former resolution between those termini. There is no essential difference between the two resolutions except

the very important change made in the northern terminus of the route which in the resolution of 1910 was Hallstead, and in the other resolution was New Milford, seven miles south. It is not claimed that there was any mistake in fixing the northern terminus at New Milford in the second resolution. When it was adopted the board of directors had before them a blue print of the map of the route adopted by the first resolution. The board knew, or must be presumed to have known because the map disclosed the fact, that the termini of the route in the first resolution were Clarks Summit and Hallstead, and in the second resolution were Clarks Summit and New Milford, and that between the latter two points the routes named in the two resolutions were the same. What then was the purpose of the board of directors in passing the resolution of January 25, 1912, adopting and appropriating the route with its northern terminus at New Milford instead of Hallstead? That resolution declares that it was the intention of the corporation to straighten and improve its road between those termini. We think it is manifest that by this resolution the intention was to change the northern terminus of the proposed improvement of the road, and to recede from its intention and purpose to change the route between New Milford and Hallstead; otherwise there was no necessity whatever for the passage of the resolution and the fixing of a different northern terminus. Under the earlier resolution the company, as suggested, could have straightened its road over the longer route without any additional corporate action. The second resolution was not passed for the purpose of changing the improved route between Clarks Summit and New Milford as adopted in the resolution of 1910, as the two routes between those termini were the same. If, however, the corporation desired to shorten its line of improvement by fixing another northern terminus, and only for that purpose, then the resolution of 1912 did become necessary. The necessity for the second resolution, therefore, was for the purpose

either of changing the route between Clarks Summit and New Milford or the northern terminus of the former adopted route, and as there was no change made in the route the only possible object of the resolution was to make a change in the northern terminus of the proposed improvement.

There is no merit in the defendant's contention that because the second resolution refers to the attached map, which was a blue print of the map attached to the first resolution, as showing the location adopted, the proposed line was extended to Hallstead. That contention is in the very teeth of the resolution itself which declares the northern terminus of the road to be New Milford and not Hallstead. The map, it is true, shows a route between Clarks Summit and Hallstead, but the resolution fixes New Milford as the northern point to which the improvement was required "for the purpose of better securing the safety of persons and property and to accommodate the increasing trade and traffic on the main line of the railroad of this company." The company manifestly did not consider it necessary at that time to improve the road beyond New Milford, or otherwise the board of directors would not have passed a resolution declaring inferentially the contrary. The board would have permitted its first resolution declaring such necessity to remain upon its minutes unimpeached by any subsequent corporate action. We agree entirely with the learned court below that the second resolution appears to be a reconsideration by the managers of the company of their prior determination to extend the improved line beyond New Milford. The defendant is relying upon both resolutions, as appears by its petition for condemnation of the land, and they are clearly conflicting in that there is a difference in the northern terminus of the two routes and, necessarily, in the extent of the improved line. It was the duty of the defendant company by appropriate corporate action to locate and fix a line for the improvement of its road which would include

a route through the plaintiff's land. This is a proceeding contrary to the course of the common law and must be strictly pursued. Private property is not to be taken by the exercise of the power of eminent domain unless the legal prerequisites are clearly and definitely established. We are of the opinion that the second resolution was a declaration by the company of its intention to limit the improvement of its road between Clarks Summit and New Milford, and was an adoption of the improved line between those termini. There is, therefore, no location of the improved line between New Milford and Hallstead and no legal appropriation by the defendant company of the plaintiff's land, and for this reason the learned court below was right in restraining the defendant from entering upon and taking the plaintiff's land.

The other questions raised by the record need not be considered. The defendant company having made no legal appropriation of the plaintiff's land, it was properly enjoined from taking the land under the condemnation proceedings brought by it in the Common Pleas, regardless of its right, under proper corporate action, to appropriate the farm crossings of the plaintiff. If the defendant hereafter takes such action to condemn the plaintiff's land, and his rights under his agreements and to the farm crossings are affected, those questions will then arise and it will become necessary to decide them.

The decree of the court below awarding the injunction without prejudice to the right of the defendant to proceed anew after having taken proper corporate action to appropriate the plaintiff's land is affirmed.