## Underwood, Appellant, v. Pennsylvania, Monongahela and Southern Railroad Company.

*Railroad companies—Eminent domain proceedings—Acquisition of property—Damages—Parties entitled to damages.*

1. The rule is well settled that a claim for damages for taking land under the right of eminent domain is a personal one and does not pass to a subsequent purchaser in the absence of circumstances indicating a contrary intent.

2. The successive steps necessary to vest title to land appropriated by a railroad company under its right of eminent domain are first, a preliminary entry on the land for the purpose of exploration and survey; second, the selection and adoption of a line as and for the location of the proposed railroad by appropriate action of the company's board of directors; and, third, the making or securing of compensation by the corporation to the owner for the damages sustained by reason of the appropriation of his land. Upon filing a bond the title passes, the right of damages is fixed and the company cannot subsequently avoid payment by abandonment of the right of way.

3. A claim for damages for taking land under the right of eminent domain in so far as the right thereto between the grantor and the grantee of the land is concerned arises when the damages are secured and accrues to the person who owns the land at the time such security is entered.

4. Where a railroad company adopted a route through private property but did not secure the damages until after such property had been conveyed, the owner of the land at the time of the entry of the security was entitled to the damages, not the heirs of the party who owned the land at the time when the route was adopted.

Argued Oct. 2, 1916. Appeal, No. 32, Oct. T., 1916, by plaintiff, from judgment of C. P. Greene Co., March

T., 1914, No. 86, on directed·verdict for defendant, in case of Thomas J. Underwood v. Pennsylvania, Monongahela and Southern Railroad Company. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Appeal from award of viewers in condemnation proceedings.

Issue to determine the ownership of a fund. Before INGHRAM, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court and judgment thereon. Plaintiff appealed.

*Errors assigned* were instructions to the jury and in directing a verdict for defendant.

*R. H. Meloy,* with him *F. W. Downey,* for appellant, cited: Dilts v. Plumville R. R. Co., 222 Pa. 516; Gilmore v. Pittsburgh, Virginia & Charleston R. R. Co., 104 Pa. 275; Buffalo, N. Y. & Philadelphia R. R. Co. v. Harvey, et al., 107 Pa. 319; Hoffman's App., 118 Pa. 512; Scott v. Central Valley R. R. Co., 33 Pa. Superior Ct. 574; Commonwealth v. Shaffer, 32 Pa. Superior Ct. 375; Quade v. Columbia & Port Deposit Ry. Co., 233 Pa. 20; Crider v. Pittsburgh, Harmony, Butler & New Castle Ry. Co., 54 Pa. Superior Ct. 587; Fischer v. Catawissa R. R. Co. & Philadelphia & Reading R. R. Co., 175 Pa. 554.

*William J. Kyle,* for appellee.—The right to compensation is a personal claim and after it has once accrued does not pass by a deed: Schuylkill & Susquehanna Navigation v. Decker, et al., 2 Watts 343; Losch's App., 109 Pa. 72; McFadden v. Johnson, 72 Pa. 335; Quade v. Columbia & Port Deposit Ry. Co., 233 Pa. 20.

The right to damages arises at the time of the appropriation: Davis v. Titusville & Oil City Co., 114 Pa. 308; Wadhams v. Lackawanna & Bloomsburg R. R. Co., 42

Pa. 303; Johnston, et al., v. Callery, 173 Pa. 129; Pittsburgh, Va. & Charleston Ry. Co. v. Commonwealth, 101 Pa. 192; Davis v. Titusville & Oil City Ry. Co., 114 Pa. 308; Kaufman v. Pittsburgh, Carnegie & Western R. R. Co., 210 Pa. 440; Johnston v. Del., Lack. & Western R. R. Co., 245 Pa. 338; Wayne v. Penna. R. R. Co., 231 Pa. 512.

OPINION BY MR. JUSTICE FRAZER, January 8, 1917:

On November 17, 1902, defendant, pursuant to plans and a previous survey, adopted a resolution appropriating a right of way for its railroad over land in Rice's Landing, Green County, owned by Peter Sharpnack. Nothing further was done, either by defendant or the landowner, with a view to securing damages until October, 1911, when the railroad company filed a bond and presented a petition for its approval by the court and also a petition for the appointment of viewers to assess damages. In the meantime Peter Sharpnack having died his heirs on February 15, 1911, conveyed the property to plaintiff by deed containing a general warranty clause and made no reference whatever to the right of way of defendant company over the property. The viewers awarded plaintiff damages to the amount of $1,750.00. Plaintiff appealed from the award and on the trial in the Common Pleas a verdict was directed for defendant on the ground that, as it appeared plaintiff purchased the land subsequent to the adoption of the resolution of 1902 by deed which did not purport to convey the right to damages they belonged to the person who owned the property in 1902 when the resolution was adopted, consequently plaintiff was not entitled to recover. The sole question raised by the appeal is the correctness of this conclusion.

The rule is well settled that a claim for damages for taking land under the right of eminent domain is a personal one and does not pass to a subsequent purchaser in the absence of circumstances indicating a contrary in-

tent: Quade v. Columbia & Port Deposit Ry. Co., 233 Pa. 20. This rule is not disputed in the present case, the exact question raised being the time of actual taking of the land or appropriation so as to convert the owner's title into a claim for damages. Was it at the time of adoption of the resolution by the board of directors of defendant company in 1902, or at the time the bond to secure damages was filed in 1911?

Numerous decisions from Williamsport & North Branch R. R. Co. v. Philadelphia & Erie R. R. Co., 141 Pa. 407, down to the recent case of Johnston v. Delaware, Lackawanna & Western R. R. Co., 245 Pa. 338, clearly show the successive steps necessary to vest title to land appropriated by a railroad company under its right of eminent domain to be, first, a preliminary entry on the land for the purpose of exploration and survey; second, the selection and adoption of a line as and for the location of the proposed railroad by appropriate action of the company's board of directors; and, third, compensation made or secured by the corporation to the owner for the damages sustained by reason of the appropriation of his land. "These are the several steps, held necessary to vest in the corporation the title to the owner's property under eminent domain proceedings. Each and every step is a prerequisite to the right of the corporation to deprive the owner of his property. When the route has been surveyed, marked on the ground, and adopted by the appropriate action of the board of directors of the corporation the experimental stage has passed and there is a fixed and definite location of the road. The route, including the termini, must be definitely determined by the board of directors. The land is then taken from the owner and appropriated to the use of the corporation. It has acquired a conditional title, good against rival corporations, but not as against the owner until compensation is made or secured to him. Until there is an experimental survey or surveys made on the ground and an adoption of the route, including the termini, by the

board of directors, there can be no appropriation of the owner's land.   As said in our cases, the act of location is at the same time the act of appropriation, and, it may be added, the latter can not take place without or in the absence of the act of location.   A legal appropriation fastens a servitude in favor of the corporation upon the property taken": Johnston v. Delaware, Lackawanna & Western R. R. Co., 245 Pa. 338 and also 342.   The court below based its decision mainly on the statement, as in the above case, which is also found in many other cases, that the act of the company in adopting a definite and permanent location amounts to an act of appropriation and fastens a servitude on the property affected thereby. This language does not imply, however, that the landowner is so far divested of title by the act of location that his only recourse is a claim for damages.   It merely amounts to a notice to him that the company intends to condemn the land and that any act done by him subsequent thereto affecting the property and inconsistent with the use for which condemnation proceedings are contemplated, must be done at his risk : Wayne v. Penna. R. R. Co., 231 Pa. 512.   Before title can pass from the owner the company is required to take the third step, to wit, make payment or secure compensation by filing a sufficient bond : Williamsport & North Branch R. R. Co. v. Philadelphia & Erie R. R. Co., supra; Johnston v. Delaware, Lackawanna & Western R. R. Co., supra. After the location is adopted, if nothing further is done by either the landowner or the railroad company with a view to securing or paying damages title remains in the former and entry by the latter without further action would be tortious: Western Penna. R. R. Co. v. Johnston, 59 Pa. 290.   If the corporation should abandon the location as adopted all right to damages for the taking of the land ceases: Speer, Administratrix, v. Monongahela R. R. Co. (No. 1), 255 Pa. 211, and cases there cited. Upon filing a bond the title passes, the right of damages is fixed and the company cannot subsequently evade pay-

ment by abandonment of the right of way: Wood v. Trustees of State Hospital for Insane at Warren, Pa., 164 Pa. 159; Dilts v. Plumville R. R. Co., 222 Pa. 516; Fischer v. Catawissa R. R. Co. & Philadelphia & Reading R. R. Co., 175 Pa. 554.

Article XVI, Section 8, of the Constitution of Pennsylvania, in conferring the right of eminent domain, requires that corporations invested with the privilege of taking private property for public use "shall make just compensation for property taken, injured or destroyed." This provision and the decisions above referred to make clear that, until compensation is made or secured, no title as against the owner vests in the corporation notwithstanding a proper location of the right of way.

In the present case the evidence fails to show that Peter Sharpnack or his heirs had actual notice of the resolution adopting the location over his land or that there was such actual staking out of the route on the ground, as would amount to constructive notice of such action. While such notice is not an essential prerequisite to a valid location (Johnston, et al., v. Callery, 184 Pa. 146) yet, until notice is received by the owner, he cannot be affected by the action of defendant's directors in so far as his dealing with his property is concerned. And even if notice had been received, as nothing was done subsequent thereto for a period of nine years the owner in the meantime having made a conveyance of the land, how can he be held to have retained the right to recover damages on the theory that a part of the land was taken by a corporation under its right of eminent domain, when in fact there had been no taking and no certainty that there ever would be? A railroad company may survey and locate several routes before finally adopting one as its permanent location and may abandon all but the one so chosen, subject to the right of the landowner in the meantime to begin proceedings to compel completion of the appropriation by payment of damages or entry of security. In the absence of such proceedings by the

owner, and until damages are paid or secured, title to the property covered by the located route remains in him and on subsequent abandonment of the location by the railroad company no right to damages for the taking of the land remains, the only remedy of the owner in such case being an action of trespass for damages suffered because of the entry on the land: Mountz v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 203 Pa. 128.

If we hold the right to damages is absolutely fixed at the time of the adoption of the location, and, being a personal right, would not pass with a transfer of the land, we have the anomalous situation of the vendee losing the land taken without notice and without compensation in violation of the constitutional inhibition, and the vendor recovering the price of the portion of the land subsequently taken, which he sold to the vendee and for which he had already received full price from the purchaser. Furthermore, the measure of damage is not the value of the land actually taken, but the amount of the depreciation caused to the whole tract. The vendor would therefore claim to recover not only the value of the land taken but also the damage caused to the tract owned by the vendee as a whole. Apart from the inhibition of the Constitution, such a result demonstrates the fallacy of the judgment of the court below. We therefore conclude the only consistent rule is to hold that a claim for damages for taking land, in so far as the right thereto between the grantor and grantee of the land is concerned, arises when the damages are secured and therefore accrues to the person who owns the land at the time such security is entered.

The judgment is reversed and a new trial granted.