## Palmerton Borough v. Palmerton Area School District

526

*Sidney R. Webb* and *Ernest R. Von Starck*, for plaintiff.

*Roger N. Nanovic*, for defendant.

LITTLE, J., May 18, 1961.—The instant case involves the complaint of the Borough of Palmerton, requesting the issue of a permanent injunction against defendant by reason of its threatened condemnation of one-half of the borough's municipal park, which the borough alleges would result in a violation of the law of this Commonwealth, a violation of principles of equity and irreparable injury to plaintiff and its citizens.

The general assembly has not expressly empowered school districts to condemn public property. Section 721 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §7-721, in part (pertinent to this issue) provides:

"Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that the board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for school purposes, whether vacant or occupied, and designate and mark the boundary lines thereof, and thereafter may use the same for such purposes according to the provisions of this act: Provided, That no board of school directors shall take by condemnation any burial ground, or any land belonging to any incorporated institution of learning, in-

corporated hospital association, or unincorporated church, incorporated or unincorporated religious association, which land is actually used or held for the purpose for which such burial ground, institution of learning, hospital association, church, or religious association was established . . ."

In the case at bar, the school district could not agree on terms of purchase with the owner, since the deed of the New Jersey Zinc Company (of Pa.) by which the Borough of Palmerton acquired the park area, provided, inter alia, as follows:

"Witnesseth, that the said grantor, has given, granted, conveyed and confirmed and by these presents, does give, grant, convey and confirm unto the grantee, its successors and assigns as long as the same shall be used for public park purposes: (Description of the park land.)

"Provided, that the lands above described and granted for public park purposes, shall be kept and maintained as a public park, and that no building or other structures, other than for park facilities, shall be erected upon such lands.

"To have and to hold, the said tract, piece or parcel of land above described unto the said grantee, to and for the only proper use and behoof of the said grantee, its successors and assigns forever, as long as the same shall be used for public park purposes."

The Borough of Palmerton holds title to this land for park purposes as trustee for the benefit of its resident citizens and is without power to dispose of the land or convert it to another use. See Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, 251 Pa. 115, where the Supreme Court (pages 123-24) said:

"The city holds, subject to the trusts, in favor of the community and is but the conservator of the

title in the soil and has neither power nor authority to sell and convey the same for private purposes . . . 'A nation, state, or municipality which dedicates land that it owns in the site of a town to public use for the purpose of a park is as conclusively estopped as a private proprietor from revoking that dedication, from selling the park, from appropriating the land which it occupies to other purposes after lots have been sold, after the town has been settled, and after the park has been improved with moneys raised by the taxation of its residents and taxpayers in reliance upon the grant and covenant, which the dedication evidences.' "

In 1954, the Supreme Court again held that where a property owner conveys land to a municipality for a particular public purpose, such as a public square, the municipality may not permit the property to be diverted to a different use, either private or public. See Bruker v. Carlisle Borough, 376 Pa. 330 (pages 336-37) where the court said:

"Nor can it be denied that, where such a dedication has been established and the public has accepted it, there cannot be any diversion of such use from a public to a private purpose, and it is also true that, where a dedication is for a limited or restricted use, any diversion therefrom to some purpose other than the one designated is likewise forbidden . . ."

For cases to the same effect, see Hoffman v. Pittsburgh, 365 Pa. 386, 391-92; Versailles Township Authority v. McKeesport, 171 Pa. Superior Ct. 377, 387.

Originally, the borough leased lands covered by the park, and among the provisions of the lease we find a paragraph providing that the lessee agrees to use the said premises of its present width and length, as hereinbefore described, for the purposes of a public park only and for no other purpose. Ordinance no. 35 approved March 10, 1915, approving the leasing of

the park, also recites that the land was to be used solely for park purposes. This was followed by a deed of the land from the zinc company, dated February 9, 1959, containing the same restrictions and purposes for which the land was to be used. This constitutes a dedication for public use and is sufficient to impress upon the Borough of Palmerton the status of trustee for its residents with relation to this public park.

We now come squarely to the question of whether a school board has power to condemn for school purposes land previously dedicated to another public use.

Section 721 of the Public School Code of March 10, 1949, supra, supplies a general delegation of the power of eminent domain subject to certain prohibitions against the taking of particular kinds of privately owned property. There is no express grant of the power to take land owned by a political subdivision or land previously dedicated to public use. While land dedicated to public use is not included within the prohibitions designated by the statute, nevertheless, to permit the taking of the park here-involved would impinge the general rule that the power to condemn will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication.

This general rule, which applies to the condemnation of public property by governmental bodies other than the State, is stated as follows in 1 Nichols, Eminent Domain §2.2 et seq., page 132 (3rd ed., 1950).

"If, on the other hand, a condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be de-

nied unless the legislature has authorized the acquisition either expressly or by necessary implication. Such an acquisition cannot be made under a general delegation of the power of eminent domain from the legislature, unless it can be clearly inferred from the nature and situation of the proposed work, and from the impractibility of constructing it without encroaching on land already used by the public, that the legislature intended to authorize such property to be taken. The manner in which the property was originally acquired, whether by purchase, by eminent domain, or otherwise, has no bearing upon the operation of the general rule . . ."

Among the leading cases supporting this rule is Vermont Hydro-Electric Corporation v. James C. Dunn, reported in 12 A. L. R. 1495, where it was held that property already legally appropriated to a public use cannot be taken for another public use without legislative authority, expressly given or necessarily implied.

Where the language of a statute conferring the power of eminent domain is general, and in the absence of some necessary implication to the contrary, it is presumed that it was not intended that land already devoted to one public use should be taken for another use, and the burden of establishing the authority is on the one relying on legislative authority. See also 10 R. C. L. pp. 198-201.

In 18 Am. Jur., Eminent Domain, §93, page 719, it is said that ". . . in the absence of express statutory authority, authority to condemn for school purposes has been denied where the land was already devoted to another public use, such as a poorhouse, public square, or public highway."

This principle was followed in the case of McCullough v. Board of Education, 51 Cal. 418, where it was held that the board of education of the City and

County of San Francisco had no authority to appropriate a public square in said city and county or any portion thereof, as a site for the erection of a school house, nor had the board of supervisors any authority to authorize such appropriation.

This rule has been maintained in Pennsylvania before and since the Public School Code of March 10, 1949, was enacted into law.

In 1923 under the Public School Code of May 18, 1911, P. L. 309, containing language similar to that of the present code, in an opinion of Attorney General reported in Condemnation of Land for Schools, 3 D. & C. 235, relating to condemnation of land for schools, we find the following (page 236):

"I am, therefore, clearly of the opinion that school boards of cities of the third class have no authority whatsoever for appropriating or condemning property owned and used by a county or other municipal district, . . ."

In In re Condemnation of Land, 35 Westmoreland 113 (1953), the court said:

"We find nothing in the Public School Code of 1949, granting or giving School Districts power or authority . . . to condemn or appropriate public . . . property, which has already been dedicated to the public or condemned by virtue of the powers of eminent domain."

In Appeal of Tyrone Township School District, decided in 1888, reported in 15 Atl. 667, (Pa. Supreme Ct.) the court held that:

"[The] Act of Pa. of April 7th, 1867, authorizing the board of directors of any school-district, 'when unable to procure such eligible sites for the erection of school-houses thereon as they may deem expedient by agreement with the owner or owners of the land, to enter upon and occupy sufficient ground for the purpose, not exceeding one acre,' does not authorize

the taking of land already appropriated by a county, and actually required for the care and support of the poor." (Syllabus)

". . . Property already devoted to public use, including franchises, is subject to eminent domain, and may be taken for other public uses; but, while this is true, it cannot be so taken without legislative authority expressly conferred or arising by necessary implication: Groff's Appeal, 128 Pa. 621 . . ." Southwestern State Normal School's Case, 213 Pa. 244 (1905). See also School District of Township of East Deer v. Van Dyke, 44 Dauph. 307, 311; Scranton Gas & Water Co., v. Delaware, Lackawanna & Western Rail Road Company, 225 Pa. 152; Appeal of Pittsburgh Junction R. Co., 122 Pa. 511.

In defendant's original brief, the school district contended that the School Code of 1949, sec. 721, gave the district only the general power of eminent domain. In a supplemental brief, filed later, defendant's counsel contends that the language employed in this section confers an express power of condemnation broad enough to permit the condemnation of lands already devoted to public use.

Counsel cites the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, etc., 46 PS §551, which provides, inter alia: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions."

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit . . ."

Counsel stresses the fact that land previously dedicated to public use is not included in the prohibitions enumerated in section 721, supra, and urges that the court is obliged to construe strictly the exemptions

which are listed in section 721 of the Public School Code of March 10, 1949, citing section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558, and to construe liberally all other provisions of the act, and that such construction binds the court to the rule that only those certain enumerated exemptions to the power of eminent domain are intended to be exemptions by the legislature, and all other lands were intended by the legislature to be subject to the power of eminent domain.

Section 58 of the Act of May 28, 1937, supra, provides that: "All provisions of a law of the classes hereafter enumerated shall be strictly construed: . . . (4) Provisions conferring the power of eminent domain." This contemplates that the exercise of the right of eminent domain, being in derogation of private right, the authority must be strictly construed; what is not granted is not to be exercised: Lance's Appeal 55 Pa. 16, 26.

We cannot substitute our judgment for that of the legislature in construing and determining the validity of a statute: Commonwealth v. James J. Cochran Post No. 251 of the V. F. W. of U. S., 350 Pa. 111. However, we do not legislate when, having discovered the legislative intent, we effectuate that intent by appropriate, although innovating, judicial procedure: Commonwealth ex rel. DeSmith v. DeSmith, 159 Pa. Superior Ct. 8.

We fail to find that the statute confers a plain unequivocal express grant to condemn lands previously dedicated to public use, and it is our opinion that, without an express grant, the school district may not condemn the Palmerton Park lot unless the power arises by implication.

The Supreme Court of our State has defined the extent of a grant similar to the one before us in a statute containing a general grant of the power to condemn, where it impinges public land.

The Act of July 10, 1901, P. L. 632, gave the board of trustees of any State normal school, when the board deemed it necessary to enlarge the area of the real estate upon which the buildings of such normal school were erected, and could not agree with the owners as to purchase, the right to enter upon and occupy sufficient ground for the purpose, which they should mark, not exceeding two acres. In this statute, there were no exceptions as to the nature of the land which might be condemned, and when the interpretation of this statute came before the court in Southwestern State Normal School's Case, supra, the Supreme Court unequivocally said:

"What the appellant seeks to do is not to take land belonging to and in the use of a private owner, but is to condemn property already dedicated to public use and used by the public as public highways, and to devote the same to what it claims to be another public use. Property already devoted to public use, including franchises, is subject to eminent domain, and may be taken for other public uses; but, while this is true, it cannot be so taken without legislative authority expressly conferred, or arising by necessary implication: Groff's Appeal, 128 Pa. 621. There is no such express power conferred upon the appellant by the act of 1901, and surely none exists by implication in view of our cases upon power arising by implication."

The Act of April 4, 1889, P. L. 25, sec. 1, provided that a school district might appropriate certain county lands. This act was repealed by the Act of May 18, 1911, P. L. 309, and the latter act gave a school district the right of condemnation (section 602) in this language: ". . . the board of school directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by purchase, lease, gift, devise, agreement, condemnation, or otherwise, any and all such real

estate, . . ." And concerning this language in Condemnation of Land for Schools, 3 D. & C. 235, the Attorney General of the State of Pennsylvania in 1923 said:

· "By the Act of April 4th, 1889 P. L. 25, school directors of cities of the third class were authorized to appropriate such public lands for school purposes and to occupy and use the same in the sufficient amount for their purposes, provided that there was more of such land than was reasonably necessary to be used and occupied by the then owners thereof. This act of assembly remained in force and effect until the passage of the Act of May 18th, 1911, P. L. 309, commonly known as the 'School Code,' which said act of assembly specifically repealed the above mentioned Act of April 4, 1889, P. L. 25, and from that time to the present we have not had any additional legislation authorizing such appropriation of public lands for school purposes."

The Act of March 10, 1949, supplies the power of condemnation in almost the same terms as the Act of July 10, 1901, P. L. 632, relating to normal schools, and the language is no more expansive than that employed in the Act of May 18, 1911, supra. It is reasonable to assume that the legislature considered the construction of the phraseology of the Act of July 10, 1901, P. L. 632, by the Supreme Court in Southwestern State Normal School's Case, 213 Pa. 244, and accepted that interpretation when enacting the statute before us.

We are strengthened in this interpretation by the recent statute of December 15, 1959, P. L. 1772, 53 PS §3382, et seq., which provides that all lands or buildings theretofore or thereafter donated to a political subdivision for use as a park, theatre, museum or other public facility, shall be deemed to be held for the public subdivision as trustee for the benefit of

the public, and that land so held must be used for the specific purpose for which it was dedicated, except only insofar as modified by court order pursuant to the act. Statutory procedure and standard is provided under which the orphans' court of the county in which the property is located may permit the political subdivision to convert the use of that property to another public use or to sell it. The orphans' court may act only upon application of the political subdivision which is the trustee, and then can act only if ". . . the continuation of the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest, . . ."

The political subdivision must substitute other lands of at least equal size and value in exchange for the trust property in order to carry out the trust purposes, or, if other such property is available, apply the proceeds of the sale to carry out the trust purposes, or, in the event the original trust purpose is no longer practicable, apply the property or the proceeds to a different public purpose. The importance which the legislature attaches to the public interest in property dedicated to public use for culture and amusement is evidenced from the fact that it also required in the act that the Attorney General be given notice of any such application, and that the public be notified of the application by intensive newspaper publication.

Does the School Board of the Borough of Palmerton possess the power to condemn the borough park by reason of compelling necessity supplying the power under a general authority of condemnation?

It is not out of order here to state that this small park in the center of a well constructed and busy municipality, with its attractive wandering stream and trees, is a possession of great value to the public.

Business activities and the accentuated speed of living in today's advancing world have not yet destroyed the importance of a quiet restful place in which to stop and rest in shade and coolness under the trees of this little park, or a place where children may play, or those of advancing age may sit on the benches and enjoy the pleasures of a place to rest without being in the way. We can well understand the great value placed upon this small piece of land by the guardian of the public interest. Old fashioned as parks in general may have now become, they are still the center of beauty of every municipality fortunate enough to have one.

The taking of one half of this park, and especially that part the school board desires to take, would destroy it, not merely from the standpoint of the impractibility of maintenance of the remainder, useless as a public park, but its loss to the borough entirely under the terms of the original agreement.

The school board has decided that there is urgent need of expanding school facilities and, after hearing the evidence, we are in accord with their conclusion. This is a matter for the board's discretion, and there should be no invasion of this field by the court.

Where sufficient reasons appear for the board's action, and there is no evidence that it acted outside the scope of its statutory authority or otherwise than in good faith, the wisdom or policy of the school authorities is not the subject of judicial inquiry. It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity: Detweiler v. Hatfield Borough School District, 376 Pa. 555, 556; Regan v. Stoddard, 361 Pa. 469, 474; Spann v. Joint Boards of School Directors, 381 Pa. 338, 349.

It is conceded by all parties that the Borough of Palmerton and the township in the school district

jointure are in need of more buildings and space. Plaintiff contends that the choice of the park upon which to build constitutes a transcendant act beyond the limits of its legal discretion.

The requirements necessary to bestow power of eminent domain by implication over lands previously devoted or dedicated to public use have been stated in several works of accredited standing in substantially the same languge.

13 P. L. Encyc., Eminent Domain, §10:

"Property previously devoted to one public use may, by the exercise of the power of eminent domain, be taken for a different public use. However, property already devoted to a public use cannot be taken merely for reasons of convenience or economy, nor will such a taking be allowed except by express grant or by necessary implication. In this connection, it has been said that there can be no implication in favor of such power unless it arises from a necessity so absolute that, without it, the grant must be defeated, and that it must also be a necessity that arises from the very nature of things."

For a like discussion, see Standard Pennsylvania Practice, vol. 14, page 210, and Nichols, vol. 1, Eminent Domain §2.2(1), page 136, where we find the following:

"There are many cases in which land in public use may unquestionably be taken under a general delegation of the power of eminent domain. Express authorization to impair or destroy the prior use is the best authority, but is not required if the nature of the proposed use is such as to confer the power by necessary implication."

The necessity required to raise the implied power must be real; a necessity which arises from circumstances over which the condemnor has no control and

which is not merely economic in nature. In Groff's Appeal, supra, it was pointed out that the necessity must be imperative. In this case (pages 633-35), it was delineated as follows:

"We are left, therefore, to the consideration of the only other ground on which the claim can rest, that of necessary implication. The imperative and inevitable nature of the implication requisite has been laid down in all our cases, and nowhere more strongly than in some of the most recent and carefully considered: See Pittsburgh Junction R. Co's App., 122 Pa. 511; Penna. R. Co's. App. 93 Pa. 150; Penna. R. Co's. App., 115 Pa. 517; Stormfeltz v. Manor Turnpike Co., 13 Pa. 555; Cake v. P. & E. R. Co., 87 Pa. 307; Tyrone School District's App. 22 W. N. 513."

"If the proposed purpose can be effected without an appropriation of property already in public use, such implication does not arise. Mere *convenience*, as contrasted with necessity will not suffice": 1 Nichols Eminent Domain §2.2(1) 3rd ed., 1950.

In Pennsylvania Railroad Company's Appeal, 93 Pa. 150, the court defined necessity in this connection (p. 159):

"It must, also, be a necessity that arises from the very nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience or for the sake of economy."

" '. . . there can be no implication unless it arises from a necessity so absolute that, without it, the grant itself will be defeated. It must also be a necessity that arises from the very nature of things, over which the corporation has no control. It may not be a necessity created by the company itself for its own convenience or for the sake of economy . . .' " The Scranton Gas and Water Company v. The Northern

Coal and Iron Company, 192 Pa. 80, 94. See also 13 P. L. Encyc., Eminent Domain, §10 pp. 230-31.

Edgewood Borough Petition 318 Pa. 268, cited by defendant's counsel does not control the propositions before us here. The land of the school district to be taken had not been used by the school district. Initial permission to use the ground was granted to the school district in 1902 and the borough had occupied the land continuously and the Supreme Court in 1935 quoting from the lower court said (p. 270) :

" ' . . . Failure of the institution to make any use of the land within the past thirty years proves that, for the present at least, it is nonessential to school operations; an examination of the proofs satisfies us that its use will not reasonably be required by the necessities of the corporation at any time hereafter. . . . And hence it is properly the subject of appropriation for another and different public use.' "

In the same case, the Supreme Court again stated the prevailing rule in Pennsylvania that property previously dedicated to public use may be condemned for another public use in the absence of some statutory provisions expressly or by implication forbidding it, when the taking will not materially impair or interfere with, or is not inconsistent with, the use already existing and is not detrimental to the public.

The projected condemnation presently before us falls clearly within the above prohibitions.

In this case, there is no necessity so absolute that without it the grant itself would be defeated. It does not here arise from the very nature of things over which the school district has no control. True, from an economical standpoint, building on the park might save a relatively small sum, but this will not supply the necessity to raise the implied power.

The building may be constructed as satisfactorily to the west by the condemnation of privately-owned

lands, and the interference with the use of the present building would not be of any great moment. It would cause, at the most, the loss of one or two classrooms. It would not involve the closing of or interference with a public thoroughfare. There would remain ample room for expansion in the same block by further condemnation of private property, should further expansion be necessary.

The zinc corporation which originally donated the park has offered the school district a conveyance, without cost, of 21 acres in the Borough of Palmerton, approximately three blocks distant from the present building.

A condemnation of the park area would fail to give the school the amount of land considered to be desirable for a school of its size.

The area west and southwest of the existing school building, consisting entirely of privately owned property, lies adjacent to the existing school; its northeast corner joins the southwest corner of the present school property where alley "G" and alley "F" run together. Plaintiff states that one or both of the intervening alleys can be permanently closed, and that the annex could be built on the property and joined to the existing school building by means of ground level connecting structure.

This site has already been approved by the Pennsylvania Department of Public Instruction.

The area on Lafayette Avenue west of the school, beginning with the Engle property and running to the west for the entire block, is desirable for the annex. It is immediately adjacent to the existing school, and, if taken now, additional property would be available for expansion.

The adoption of either of these sites would achieve the annex desired, cost approximately the same as

building on the park, permit a shorter connection between the proposed school annex and the present building, avoid building over a busy thoroughfare, permit further expansion and preserve the public park. Building on the proposed 21 acres would furnish much more land for playground and expansion, and offers the school district a third alternative of great value, and the proposed purpose can be effected without appropriating property already in public use.

The Palmerton Borough School District, under its general power of condemnation, may not condemn the public park of the Borough of Palmerton. A compelling necessity sufficient to raise the power by implication is completely lacking.

Complaint for an injunction is the appropriate remedy. "The owner of property taken, injured, or destroyed may enjoin an appropriation by a corporation possessing the right of eminent domain, where the property is not subject to condemnation or where authority to undertake the particular appropriation has not been conferred upon the condemning body": 14 Standard Pa. Pract., §1235, p. 595, and see Johnston v. Delaware, Lackawanna & Western Railroad Co., 245 Pa. 338; Weigold v. Pittsburg, Etc., R. R. Co., 208 Pa. 81; The Scranton Gas and Water Company v. The Northern Coal & Iron Company, 192 Pa. 80, and Appeal of W. W. Groff, 128 Pa. 621. . . .

### Decree Nisi

Now, to wit, May 18, 1961, it is ordered, adjudged and decreed that defendant, the Palmerton Area School District, be permanently and perpetually enjoined from further proceeding with the appropriation and condemnation attempted in defendant's resolution of May 24, 1960, purporting to take and occupy a portion of the Palmerton Borough Public Park, and the proceedings in the court of common

pleas of Carbon County, docket no. 4, October term 1960.

It is further ordered, adjudged and decreed that the proceedings in the court of common pleas of Carbon County, docket no. 4 of October term 1960, are null and void and of no effect.

The prothonotary is directed to give notice of this decree nisi to the parties to this proceeding and, unless exceptions are filed within 20 days after such notice, this decree shall be entered as of course by the prothonotary as the final decree.